Scottish-American Mortgage Company, Limited, v.
Anna Massie et al.

No. 975. Decided January 28, 1901.

**1. Wife's Separate Property—Control Over.**

Money the property of the wife is, with the consent of the husband, absolutely subject to her disposition; and she may make a contract with the husband placing it in his hands as trustee. (Pp. 343, 344.)

**2. Trustee—Sale for Reinvestment—Power Construed.**

See contract between husband and wife making the former trustee of separate funds of the latter, to be used and invested at his discretion for the benefit of her children by a former marriage, under which the husband, having invested in land taking title to himself as trustee, was held empowered to sell same for reinvestment, and. hence to have conveyed, by his deed to a purchaser, title as against the beneficiaries. (Pp. 342-345.)

**3. Same—Power—Words Construed.**

The effect of the words, "use at his discretion," "invest," "handle," "proceeds," "profits," "increase," "reinvest increase or profits," etc., in an instrument by which a wife made her husband a trustee for the benefit of her children, considered as affecting the question of his right to sell and reinvest after having once invested the trust fund for their benefit. (Pp. 344, 345.)

Error to the Court of Civil Appeals for the Second District in an appeal from Palo Pinto County.

Anna Massie and others sued the mortgage company in trespass to try title, and had judgment. Defendant appealed, and on affirmance obtained writ of error from the Supreme Court.

*Gano, Gano & Gano,* for plaintiff in error.—A married woman has the legal right to make any form of conveyance, contract, or agreement in regard to her separate personal property, just as if she were a feme sole. Ballard v. Carmichael, 83 Texas, 355; San Antonio v. Grandjean, 91 Texas, 430; Ikard v. Thompson, 81 Texas, 285; Read v. Allen, 56 Texas, 193; McKay v. Treadwell, 8 Texas, 180; Bennett v. Land Co., 1 Texas Civ. App., 324.

After the passage of the Act of 1879, only instruments of writing purporting to be a conveyance of real estate are required to be acknowledged by the wife separate and apart from her husband, while conveyances of personal property are not now, nor were they prior to 1879, required even to be in writing, but since the Act of 1879, if a conveyance in writing of the separate personal property of the wife is made, with or without the husband joining her in said conveyance, the same is not required to be acknowledged by her separate and apart from her husband. Ballard v. Carmichael, 83 Texas, 355; Gardner v. Randell, 70 Texas, 456; Reed v. Howard, 71 Texas, 205; Ikard v. Thompson, 81 Texas, 285; Gibbons v. Bell, 45 Texas, 419.

An agreement or contract ought to receive that construction that will best effectuate the intention of the parties to be collected from the whole of the agreement. Anson on Con., 2 Am. ed., 330 and

authorities there cited; Moore v. Paris Oil and Cotton Co., 9 Texas Civ. App., 27; 1 Beach on Trusts and Trustees, secs. 283, 284.

The profit arising from an investment in lands or the increase in the value of lands (i. e., increase as applied to lands), does not include crops grown on lands, rents, etc., but means the appreciation in value of the lands, and any terms or expressions used in a contract are presumed to be used in their legal meaning. Evans v. Purinton, 34 S. W. Rep., 350; Cabell v. Menczer, 35 S. W. Rep., 206.

The very terms of the contract introduced in evidence not only give authority to sell but require W. A. Garner to sell whatever property the $4000 was invested in, if he saw it was necessary for the interest of the children.

A married woman can make any contract in regard to her separate personal property which will even carry an interest in lands when said personal property becomes invested in lands, and while she can not make a power of attorney to her husband to convey lands, she can convey to him personal property with the power to invest and reinvest the proceeds and profits arising from such investments, which will carry with it a power to sell lands, in case the personal property should afterwards be invested in lands. Ikard v. Thompson, 81 Texas, 285; Gardner v. Randell, 70 Texas, 456; Gibbons v. Bell, 45 Texas, 419; Reed v. Howard, 71 Texas, 205; Smith v. Crosby, 47 Texas, 121; Ballard v. Carmichael, 83 Texas, 355.

The contract of gift executed by Mrs. Garner conveyed to her children, Anna and Fannie Pepper, the personal property subject to the control and management of W. A. Garner, as specified in the contract or agreement and subject to such change in form and substance of said property as should be brought about by the investment and reinvestment provided in and specified by the terms of said contract; and further than this no trust relationship was created. 2 Perry on Trusts, sec. 766; 2 Beach on Trusts and Trustees, secs. 466, 467.

*Greene & Stewart*, for defendants in error.—The land in controversy having been purchased by W. A. Garner for Anna and Fannie Pepper, minors, defendants in error, and paid for with $4000, the money turned over to him by their mother to be invested for their use, and deed taken for same in the name of W. A. Garner, trustee for said Anna and Fannie Pepper as grantees, the superior equitable title in and to said land thereby became and was vested in said minors, and said W. A. Garner was without power to divest such title out of them by any deed or other instrument made by him. 1 Perry on Trusts, secs. 127, 165, 452, 453, 460, 465, 466; 2 Id., secs. 609, 764.

The deed for the land in controversy from Harris to W. A. Garner, trustee for Anna and Fannie Pepper, being duly of record at the time of the execution of the deed from said W. A. Garner to the Brazos Cattle Company, and said last deed showing on its face that it was made by said Garner as trustee for said Anna and Fannie Pepper, the said Brazos Cattle Company took no title thereby adverse to the

equitable title of said Anna and Fannie Pepper, and the plaintiff in error claiming under the two above referred to deeds is affected by the notice therein given of the rights of said minors in and to said land, and can not be heard to controvert said rights. Golson v. Fielder, 21 S. W. Rep., 173; 1 Perry on Trust, secs. 217, 223.

There can be no question that the $4000 turned over to W. A. Garner by his wife on November 2, 1882, was the property of Anna and Fannie Pepper on November 16, 1882, when Garner paid same to Harris for the land in controversy, and took deed for the same to himself as trustee for them, and when this was done, it seems equally clear to us that the beneficial title, the perfect equitable title to this land, thereby became and was vested in said minors (see 1 Perry on Trusts, section 127), and that said W. A. Garner thereupon took and held said land in trust for them. This being so, the question is, did Garner have power, without authority from a court having jurisdiction, by sale of said land, to divest their interest in same? It would not, we presume, be contended that if he held the land as a simple or dry trust he would have any power to sell same. Mr. Perry in his work above referred to says: "Under no circumstances can a trustee or guardian of an infant convert the ward's real estate into personalty by a sale without the decree, order, or license of a court." 2 Perry on Trusts, sec. 609. Thus it is apparent that if Garner had any power or authority to sell the land, it must be derived from the instrument which created the trust, viz., the contract between his wife and himself; and this is, as we understand it, the only real issue in the case.

In discussing this question we desire to call the attention of the court to the fact that it is the settled policy of the common law and of our own State (as exhibited by legislative enactment and judicial decisions), that funds belonging to minors should be invested in real estate and preserved in that state for them without alienation, except for cogent reasons and under proper safeguards. In 1 Perry on Trust, section 453, it is said: "There is one rule that is of universal application to instruments by trustees, and that rule is that trustees can not invest trust moneys in personal securities. If the trustee have a discretion as to the kind of investment it is not a sound discretion to invest it in personal securities."

When Mrs. Garner turned over this money to her husband "to be held, used, and invested by him in such manner and at such times as he in his discretion might see proper, but to be in trust for the benefit of said children," she is to be understood as intending the same to be by him put into real estate or real estate securities; that he should invest the same at such times, that is, all at once, or part at one time and part at another, in such manner, that is by buying land outright or by loaning on real estate securities, either or both at his discretion.

At any rate, when Mr. Garner did invest the money in the land in controversy he exhausted the discretion given him by the instrument and had no power to vary the same. There are no words to be found in the instrument which authorized or empowered him to realize on

an investment made by him, and there is nothing, either directed or authorized, to be done by him to accomplish which it would be either necessary or proper to realize on an investment made.

Plaintiff in error contends that by the terms of the original agreement Garner was authorized to invest and reinvest the fund, and that to reinvest he must, of necessity, realize on the first investment. The error in this contention is that neither the word "reinvest" nor any other conveying that idea is to be found in the granting clause of the contract, nor is the word found in any other part of the instrument, save in the last sentence of W. A. Garner's acceptance of the trust wherein he agrees that he will reinvest the increase or profits arising from the investment of said money, and it seems to us that the word, occurring in the connection in which it does, if it bears on the question at issue at all, is rather against than in favor of the contention of plaintiff in error, showing that the parties considered that the increase or profits only, and not the corpus of the property, might or would be in condition to require reinvestment, else they would, while on the subject of reinvestment, have provided for the reinvestment of the corpus also.

Looking to the whole instrument and the circumstances surrounding its execution to ascertain the intention of Mrs. Garner in creating the trust, we think it clear that she intended that this money should be invested, that is, put permanently into some property or properties that would, by increase in value or by yielding profit, be increased for the benefit of her said children.

GAINES, CHIEF JUSTICE.—This was an action of trespass to try title brought by Anna Massie, joined by her husband, and Fannie Pepper, a feme sole, to recover of the Scottish-American Mortgage Company, Limited, an undivided one-fourth interest in certain lands described in the petition. They recovered a judgment which was affirmed upon appeal.

The father of the plaintiffs died while they were infants of tender years and their mother subsequently married W. A. Garner. The mother being possessed of the sum of $4000 as her separate property, delivered the money to her husband to be invested for the use and benefit of her two minor daughters under the terms of the following contract entered into between her and her husband:

"Contract and agreement made and entered into between W. A. Garner and Lillie H. Garner, his wife, witnesseth: That whereas the said Lillie H. Garner owns and is possessed of the sum of four thousand dollars in money, said money being her separate property, having been acquired by her before marriage with the said W. A. Garner; and whereas she, the said Lillie H. Garner, desires to have said money used and invested in such manner that the same and the proceeds and the profits thereof shall accrue to the exclusive benefit of her children, Anna Pepper and Fannie Pepper, and whereas the said W. A. Garner

agrees and is willing that said money shall be so invested and the proceeds and profits thereof shall vest in said children;

"Now, therefore, in consideration of the premises, the said Lillie H. Garner does by these presents make, constitute, and appoint the said W. A. Garner the trustee of said money for the purpose hereinbefore mentioned, and does hereby set over, transfer, and deliver to him the said sum of four thousand dollars to be held, used, and invested by him in such manner and at such times as he in his discretion may see proper, but to be in trust for the benefit of the said children, and the said W. A. Garner on his part accepts the said trust, hereby acknowledging the receipt of said money, and agrees and binds himself that he will faithfully use, invest and handle said money to the best advantage according to his ability, and that the proceeds and profits arising from the same shall accrue to the said children of the said Lillie H., and that the increase or profits arising from any investment of said money shall belong to said children, and that he will reinvest such increase or profits for their benefit.

"Witness our hands this 2nd day of November, A. D. 1882.

(Signed)   "W. A. GARNER.<br>"LILLIE H. GARNER."

The instrument was duly acknowledged by the wife in the mode required by our statutes in order to convey the separate property of a married woman. Garner invested the money in the property in controversy, taking a deed to himself "as trustee for Anna Pepper and Fannie Pepper," who were then minors; and before the marriage of Mrs. Massie and during the minority of both, he conveyed the land so bought to the Brazos Land and Cattle Company, whose title the plaintiff in error now has.

The determination of the right of the parties to the property in controversy depends upon the construction of the contract between Mrs. Garner and her husband. If it empowered the latter to invest the money in land and to sell the land in order to change the investment, then the plaintiff in error has the title. But on the other hand, if after having invested the fund he was without power to sell the property acquired by the investment, judgment was correctly rendered for the defendants in error. The purpose of the construction of written instruments is to ascertain the intention of the parties to them, and when this intention is ascertained it must be given effect. The language of the contract in question is not technical. The words employed are words in common use in the transaction of business; and we are of opinion that their meaning is not difficult to determine. But preliminary to a discussion of the words themselves, it is to be borne in mind that the money was the property of the wife, and, with the consent of the husband, was absolutely subject to her disposition. With his consent, she could have invested it in lands for the use of her children, retaining the title in her own name, and at her own discretion could have sold the property acquired by it, holding the proceeds for

the same purpose. But it seems that she considered the husband more competent to execute this trust, and he being willing, they made the contract by which she imposed upon him the confidential duty of administering the fund, and he accepted the trust confided to him. By the agreement, the money was placed in his hands for disposition. What are the limitations upon his power over it? Clearly he was to administer the fund not for his own purposes, but solely for the use of the beneficiaries named. Clearly also, we think he was to invest it, but there were no restrictions as to the character of the securities or property in which it was to be invested. But when once invested in permanent property—in land, for example—did he lose the power of changing the investment? This is the controlling question in the case, and we think it must be answered in the negative. In what may be called the granting clause of the instrument, the fund is transferred to the husband "to be held, used, and invested by him in such manner and at such times as he in his discretion may see proper, but to be in trust," etc. And again in the accepting clause, the husband binds himself to "faithfully use, invest, and handle said money to the best advantage according to his ability." If the words had been merely "to use at his discretion," it could hardly be contended that the trustee would not have been empowered to buy and sell with it; and we do not think that the word "invest" was intended to limit the words of the context. It rather seems that it was the purpose to enlarge the meaning so as to expressly authorize the husband to invest in property. Still more significant, as we think, is the word "handle," found in what we have called the accepting clause of the instrument. To handle a commodity means to buy and sell such commodity (Century Dictionary), and the power to handle a fund implies the power to use it in making purchases and to sell the thing so bought for the purpose of changing the investment. So, too, the words "proceeds and profits" and the word "increase," as used in the contract, indicate something more than the rents or hire of property, or its mere increase in value or interest upon the money itself. They tend to show that it was contemplated that there might be some profit resulting from handling the fund other than rents, hire, or interest; such for example as an increment arising from a purchase of property and a sale for reinvestment. Certainly no such provision was necessary as to an increase in value of the property held in trust, and unless it was contemplated that he had the power to sell, its insertion was nugatory.

But it is argued that since the contract expressly provides that the husband shall reinvest "the increase or profits" of the fund, and nowhere else makes any provision for reinvestment, it is to be implied that he was authorized to reinvest only such increase and profits. But the provision was probably inserted for two reasons only: (1) to remove all question as to the right of the husband to claim the income of the fund as community property,—a right he would have had but for the contract,—and (2) to empower him and to make it his duty to render productive any increase of the money or profits arising from

the use or purchase and sale of property in which it might be invested. Here again the use of the comprehensive terms "increase or profits" indicates that the parties had in view a probable purchase and sale of property.

Our conclusion is that it was the intention of the parties to the contract in question that the husband should have the power to invest the trust fund in property and to sell the property for a change of investment at his discretion; and that therefore the plaintiffs were not entitled to recover.

Since there is no dispute about the facts, the judgment of the District Court and that of the Court of Civil Appeals are reversed and judgment is here rendered for the plaintiff in error.

*Reversed and rendered.*