[Civ. No. 891.   Third Appellate District.—December 16, 1911.]

RHODY RINGROSE, as Trustee of the Estate of ANN GALVIN, Deceased, Appellant, v. JOSEPHINE V. GLEADALL and JOSEPH GLEADALL, Respondents.

TRUST—CONSTRUCTION OF INSTRUMENT—RULES OF INTERPRETATION— BENEFICIARY FAVORED.—Not only must the instrument creating a trust be considered in determining the nature, extent and object of the trust, but also, in determining the intent of the trustor and the scope of the trust, the familiar rules for the interpretation of contracts found in title III of the Civil Code must be applied. And, if the language of the trust be ambiguous or uncertain, it will be construed, if possible, in favor of the beneficiary and against the trustee.

ID.—TRUST UNDER WILL—DUTIES OF TRUSTEE LIMITED—COMPLETION OF DUTIES—TERMINATION OF ACTIVE TRUST.—Where a trust created by will provides that the trustee is to sell certain land, and invest the proceeds for the benefit of two beneficiaries named, and makes

no further provision for any further duties of the trustee, the active trust is terminated upon the discharge of the duties specified; and thereafter the trustee holds the bare legal title for the beneficiaries. Nothing can be read into the trust which is not found therein; and without regard to the reasons for so limiting the duties of the trustee, it is sufficient that they are so limited, and effect can only be given to its language as used.

ID.—ORIGINAL TRUST FOR HUSBAND AND WIFE—AGREEMENT FOR SEPARATION AND FOR SEVERANCE OF RIGHTS WITH TRUSTEE—DRY TRUST NOT ENLARGED.—Where the original trust, as created, was for a husband and wife jointly, and after the active duties of the trust had been fully performed by the trustee there was an agreement for a separation between the husband and wife, and a separate agreement was thereafter entered into between the trustee and each of the beneficiaries for a severance of the trust, as to each of them, though the original trust was thereby superseded as to each of the beneficiaries, yet the dry trust as to the mere legal title held for each of them, severally, was not thereby enlarged.

ID.—EFFECT OF DRY TRUST—RIGHTS OF BENEFICIARY—POSSESSION—TRANSFER—ENFORCEMENT OF CONVEYANCE.—Where there is a mere dry trust of the naked legal title for a particular beneficiary, such beneficiary is entitled to the actual possession and enjoyment of the property so held, and to dispose of the same, and to call upon the naked trustee for such conveyances of the legal estate as he may direct, and his grantee may also proceed, in accordance with law, to enforce a conveyance.

ID.—RIGHTS OF PERSONS OF FULL AGE TO TERMINATE TRUST.—Where all of the beneficiaries of a trust are of full age, they have the right in equity to a dissolution of the trust and the discharge of the trustee, where no reason appears why they should not exercise the right to dispose of the property.

APPEAL from a judgment of the Superior Court of Contra Costa County. R. H. Latimer, Judge.

The facts are stated in the opinion of the court.

James H. Boyer, for Appellant.

M. R. Jones, and L. D. Windrem, for Respondents.

BURNETT, J.—The action, brought to cancel a deed made by one George Lewis to the defendant Josephine V. Gleadall and to quiet plaintiff's title as against both defendants, resulted in a judgment for the latter in accordance with their answer and cross-complaint. There is no controversy as to

the essential facts in the case. In 1887 Ann Galvin died testate in Contra Costa county and, on the eighteenth day of November, 1898, the superior court of said county, by its decree of final distribution in the matter of the estate of said Ann Galvin, deceased, distributed certain real property belonging to said estate and situated in said county, in accordance with the terms of the will of said decedent, in severalty to Rhody Ringrose as trustee in trust for said George Lewis and Margaret Lewis to sell and dispose of and invest the proceeds in such manner as said George Lewis and Margaret Lewis shall have the benefit thereof, the investment to be made by said trustee as he shall think for the best interest of George Lewis and Margaret Lewis. Plaintiff sold the lands so distributed to him and invested a portion of the proceeds in other lands, a part of which is involved in this action, and he invested the balance of the said proceeds in a mortgage. On August 21, 1905, George and Margaret Lewis and the plaintiff entered into two agreements providing for the separation of said George Lewis and Margaret Lewis and the division between them of all the property then in the hands of the plaintiff, and that plaintiff should hold said property in certain proportions, specified in the agreement, in trust for the use of said parties. Immediately after this division, George Lewis entered into and continued in possession of the real property until his death. Prior to his death, plaintiff paid to him practically all of the moneys specified as belonging to him in said agreements, and to Margaret Lewis, the greater portion of her share. On March 22, 1907, George Lewis, for a good and valuable consideration, conveyed to the defendant, Josephine V. Gleadall, the lands in controversy. Subsequent to the death of Lewis, Ringrose individually joined with said Margaret Lewis and Ellen Lewis, a sister of George Lewis—the latter two being the sole heirs of said Ann Galvin—in an action against these same defendants in which plaintiffs claimed to own the property in controversy here, but they afterward dismissed the suit. Ringrose afterward filed a petition for letters of administration on the estate of George Lewis, deceased, in which he alleged that said Lewis owned this real property at the time of his death. After letters were issued to him Ringrose brought an action against these same defendants to cancel said deed from Lewis to

Gleadall, in which action plaintiff claimed that Lewis was the owner in fee simple of the property. Judgment went for defendants. Thereafter the present action was brought by Ringrose and the appeal is from the judgment on a bill of exceptions.

We deem it unnecessary to notice all the questions discussed by counsel, as, beyond doubt, the vital and decisive point as to the termination of the trust must be resolved so as to render impossible a decision in favor of appellant.

Of course, it is elementary and axiomatic that we must look to the instrument creating the trust to determine the nature, extent and object of said trust. (Civ. Code, secs. 2253, 2258, 2267; *Tyler* v. *Granger*, 48 Cal. 259; *Good* v. *Montgomery*, 119 Cal. 557, [63 Am. St. Rep. 145, 51 Pac. 681]; *Keating* v. *Smith*, 154 Cal. 191, [97 Pac. 300].) Neither will it be disputed that, where there is a written instrument creating a trust, to determine the intent of the trustor and the scope of the trust we must apply the familiar rules for the interpretation of contracts found in title III of the Civil Code.

It is also a reasonable requirement, and is the law, that if the language of the trust be ambiguous or uncertain, it will be construed, if possible, in favor of the beneficiary and against the trustee. Or, as it has been expressed in *Sprague* v. *Edwards,* 48 Cal. 247: "In general, doubtful clauses in a deed are construed most strongly against the grantor and as favorably to the grantee as the language will permit. The same rule holds good as between a trustee of an express trust, having no interest in the trust fund, and the *cestui que trust.* In such cases doubtful clauses in the instrument creating the trust are construed strictly as against the trustee acting under a power, and most favorably to the beneficiary under the trust."

As found in the decree of distribution, this is the language of the first trust in controversy here: "It is further ordered, adjudged and decreed that all that tract of land [describing it] be and the same is hereby distributed in accordance with the terms of the will of said deceased in severalty to Rhody Ringrose, as trustee, in trust for George Lewis and Margaret Lewis, wife of George Lewis, 'to sell and dispose of and to invest the proceeds in such manner' as George Lewis and said

Margaret Lewis 'shall have the benefit thereof, the investment to be made by said trustee as he shall think for the best interest' of said George Lewis and said Margaret Lewis.'' The language of the decree of distribution, it may be said, has the exact significance of the corresponding language of the will. It will be observed that no reason is assigned for the creation of the trust, no time is designated for its continuance, no particular directions prescribed for any payments to the beneficiaries or for any accounting by the trustee and only two duties are imposed upon said trustee. These are to sell certain land and to invest the proceeds for the benefit of the *cestui que trust.* The trustee performed these two duties. Was there anything else for him to do in order to discharge his trust? It would be impossible to so hold without reading into the declaration of trust something not found therein. We may imagine that the testatrix intended that the trust should continue during the lifetime of the beneficiaries, but, if so, she failed to express her intention. On the other hand, it is easily conceivable that she had good reasons for confining it to the sale of the land and an investment of the proceeds. But whether with or without reason, she did so limit it, and we have nothing to do but to give effect to the language as we find it.

In *Sears* v. *Choate,* 146 Mass. 395, [4 Am. St. Rep. 320, 15 N. E. 786], there was a bill in equity to terminate a trust created for the benefit of the plaintiff by the will of his father, providing that ''all such parts of the income of my estate which may be necessary for the support and education of my son, I order to be used for that purpose and when he shall be twenty-one years old, I direct that four thousand dollars be paid to him annually; when he shall be twenty-five years old, six thousand dollars per annum; and ten thousand dollars when he shall be thirty years old.'' When the plaintiff reached the age of twenty-one, in 1875, all the property then in the hands of the trustees not required to pay the plaintiff the annuity bequeathed to him by the will was ordered, in a suit, to be paid to him as his own absolute property. Referring to this statement in a former opinion that ''it is conceded by all parties that in order to carry out the plain intention of the testator to secure to his son an honorable support during his life, not exposed to the risks of his improvi-

dence or misfortunes, the trustees should retain in their hands enough of the estate to produce beyond question the annuity provided for in the will,'' the court says: ''It is quite probable that the testator had this idea or intention in his mind; but if he had, he failed to frame his will in such a way as to carry out his intention. This court has held that the founder of a trust may give an equitable life tenant a qualified estate in income which he cannot alienate and which his creditors cannot reach. (*Broadway National Bank* v. *Adams,* 133 Mass. 170, [43 Am. Rep. 504].) But in order to give such a qualified estate, instead of an absolute one, the language of the founder must be clear and unequivocal to that effect. Taking this will as it is, we should not be justified in holding that the plaintiff took anything less than an absolute equitable estate, both in the income and in the *corpus* of the trust.'' The same principle is announced by all the authorities.

The purpose of the original trust, therefore, having been accomplished, the estate of the trustee would be terminated and he would hold nothing more than the bare legal title for the beneficiaries. (Civ. Code, sec. 871; Pomeroy's Equity Jurisprudence, sec. 1065; Perry on Trusts, sec. 520.)

The same result must flow from the construction and operation of the said agreements of the trustee and beneficiaries. One of these agreements, designated as ''Exhibit A'' in the complaint, is the contract of separation, and states that it is made between George Lewis, party of the first part, and Margaret Lewis, wife of George Lewis, party of the second part. At the end of the agreement, in addition to the signatures of the parties thereto, appear the name of Thos. B. Phelby, Jr., signed as a witness, and the name of Rhody Ringrose, although for what purpose or in what capacity Ringrose signed the agreement does not appear. It is contended, therefore, by appellant ''that the mere signing of his name at the end of the agreement, which states distinctly the names of the parties thereto, did not thereby make him a party to such agreement. (*Lancaster* v. *Roberts*, 144 Ill. 213, [33 N. E. 27]; *Blackman* v. *Davis*, 128 Mass. 538; *Evans* v. *Conklin*, 71 Hun, 536, [24 N. Y. Supp. 1081].) Appellant seems, though, to have forgotten his stipulation at the trial that: ''On the twenty-first day of August, 1905, said George Lewis and Margaret Lewis, his wife, and Rhody Ringrose entered into

two certain agreements in writing with and concerning the real property hereinafter described, copies of which agreements are annexed to the complaint herein and marked respectively Exhibits A and B and made a part hereof.'' But it makes no difference whatever whether the trustee was a party to that agreement. On the same day another contract was entered into between the trustee and the said beneficiaries for the purpose of giving effect to the agreement of separation as far as the division of the property is concerned. It is not disputed that it was competent for the parties to enter into this agreement which is set out in the complaint and designated as ''Exhibit B.'' This agreement was made between ''George Lewis, the party of the first part, and Margaret Lewis, wife of said George Lewis, the party of the second part and Rhody Ringrose, the party of the third part,'' and it recited: ''That whereas the said party of the third part holds the legal title to the real property hereinafter described and also'' a certain promissory note ''in trust, nevertheless, for the use of the said party of the first part and the said party of the second part and whereas simultaneously with the execution of this agreement, the said party of the first part and the said party of the second part have entered into a contract agreeing to an immediate separation and to a division between them, of the property above mentioned and the whole thereof, Now therefore, it is hereby mutually agreed by and between the parties hereto as follows, to wit 1. That the said party of the third part, as trustee is to hold, to and for the use of said party of the first part that certain parcel of land'' herein involved and also 17/60 of the sum due on the said promissory note. Then follows the agreement for the trustee ''to hold to and for the sole and separate use of the said party of the second part 43/60'' of the sum due on the said promissory note.

The proper view is, undoubtedly, that by agreement of all the parties in interest the original trust, as we have called it, was superseded by this said contract of August 21st. But it is clear as anything can be that the powers of the trustee are not enlarged. In fact, the trust is plainly not active but what is designated as a simple or dry trust. ''In such case, the *cestui que trust* is entitled to the actual possession and enjoyment of the property, and to dispose of it, or to call upon

the trustee to execute such conveyances of the legal estate as he directs.   In short, the *cestui que trust* has an absolute control over the beneficial interest together with a right to call for the legal title, and the person in whom the legal title vests is a simple ordinary trustee.''   (Perry on Trusts, sec. 520.) As we have seen, this was the view of the situation taken by the parties.   George Lewis immediately entered into the possession of said real estate and so continued until his death. The trustee also began dividing the money between the beneficiaries as they had agreed.   By the conduct of the parties we have thus a construction of the contract which, it may be said, comports strictly with the terms employed.

We think there can be no doubt that Josephine V. Gleadall, as the grantee of George Lewis, the beneficial owner of the property, has proceeded in accordance with law to enforce a conveyance to her.   (*O'Connor* v. *Irvine,* 74 Cal. 435, [16 Pac. 236] ; *King* v. *Noble,* 136 Cal. 153, [68 Pac. 579] ; *White* v. *Costigan,* 138 Cal. 569, [72 Pac. 178].)

The cases cited by appellant  possess distinctive features that warrant the judgment in each, but there is nothing in any of them opposed to the finding of the trial court herein.

In *Hayes* v. *Applegate,* 101 Ky. 22, [39 S. W. 436], the question was whether ''a valid marketable title in fee simple'' was held by the grantee of a deed executed by the trustee of a trust, whose terms are set out in the opinion.   It seems that the property was the subject of a reinvestment by the trustee, and it was contended that by the first sale and investment of the proceeds the power of the trustee was spent. But the court properly held that the evident purpose of the trust was to make the estate of the beneficiary productive, and it was said that ''the provision that the proceeds of sale, as well as any property purchased therewith, should be held 'under the same trust as herein created' must be held to continue the power of sale and reinvestment so as to keep the trust estate productive.''

*In re Trelease,* 49 Misc. Rep. 318, [96 N. Y. Supp. 318], involved the construction of a bequest to the testator's wife of certain property, ''the money to be invested in bond and mortgage or in other property, and she shall have the income thereof and she shall have the right to use the principal as she may need it.''   The disputed point was whether she took

simply a life estate. The court said: "It is apparent that the intention of the deceased was that his wife should not only have the income from his property but also the principal, if she needed it. He so stated. She took more than a life interest, and could use the principal as necessity required."

In *Dudley* v. *People's Trust Co.*, 57 Misc. Rep. 230, [107 N. Y. Supp. 930], the deed of trust "empowered the trustees on the death of the grantor to divide the trust fund into equal parts and hold such parts in trust for the grantor's children, giving each of them during his life the income from a single part, and providing that, on the death of each of such children who might survive the grantor, the principal of his share should be transferred as such child might appoint by will, and in default of such appointment to his legal representatives." The court simply followed the plain language of the trust and held that it was intended that the trustee should hold each part during the life of the beneficiary, and that only after the latter's death should his share go to his devisee or his legal representatives.

The question in *Hart's Estate*, 203 Pa. 480, [53 Atl. 364], was whether the trustees were liable for loss on account of an unwise investment. It was contended that the terms of the trust left the matter entirely to their discretion, as they were authorized "To sell any part thereof and to invest the proceeds in such other securities as may in their judgment be best." The court, however, applied the rule that "where a trustee neither exercises common skill, common prudence nor common caution, and is either guilty of supine negligence in being ignorant of facts which ordinary intelligence would have disclosed to him, or if known, in not exercising his best judgment upon them, and a loss results, he will be surcharged."

A similar question was involved in *Gray* v. *Lynch and McDonald*, 8 Gill (Md.), 419. It was held that the trustees exercised a fair discretion and acted in good faith, and therefore were not liable for loss. Another disputed point decided was that where a testator devised to three trustees, by name, certain property in trust, to sell and convert it into money, and invest the proceeds in some safe and profitable stock, which they were to hold in trust for the sole and separate use of the testator's two daughters during their lives

and then for their children, it was a power coupled with an interest or trust, which, upon the death of one could be executed by the surviving trustees.

In *Scottish-American Mortgage Co.* v. *Massie,* 94 Tex. 339, [60 S. W. 544], it was said that "The purpose of the construction of written instruments is to ascertain the intention of the parties to them, and when this intention is ascertained it must be given effect." Noting the peculiar terms of the trust, it was held that the effect of the words, "use at his discretion," "invest," "handle," "proceeds," "profits," "increase," "reinvest increase of profits," in an instrument by which a wife made her husband a trustee for the benefit of her children was to authorize him to sell and reinvest after having once invested the trust fund for their benefit.

The decision in *Wirth* v. *Wirth,* 183 Mass. 527, [67 N. E. 657], is grounded upon the principles of equity and public policy. The action was brought to compel a trustee to transfer a liquor business *in specie* to two beneficiaries, one of whom was a minor. It was held that, "if it were assumed that the plaintiffs had a right to have the trust terminated, and if it also were assumed that there might be circumstances which would justify a court of equity in compelling an executor or administrator with the will annexed to turn over *in specie* to the residuary legatees all the property belonging to such a business, the fact that one of the beneficiaries was a minor, who could not conduct the business legally in person or by his guardian, was a sufficient reason for refusing the decree prayed for."

In the *Matter of Wilkin,* 183 N. Y. 104, [75 N. E. 1105], it was held that "A bequest of a specified sum of money to an executor 'to be by him invested and to be paid, together with the income thereof' to a son of the testator, 'or to his wife or children, at such times, in such sums and in such manner as such executor may deem best for the interest' of such son, creates a valid trust of personal property, covering both principal and interest of the fund, and authorizes the executor, in the exercise of his sound discretion, in good faith, to pay over the whole or any part of the principal of the fund to the testator's son, or his wife or children, at such times, in such sums and in such manner as such executor may deem best for the interest of that son."

17 Cal. App.—43

There is manifestly another aspect in which the case might be viewed so as to uphold the judgment of the trial court. It is set forth in *Eakle* v. *Ingram,* 142 Cal. 15, [100 Am. St. Rep. 99, 75 Pac. 566], where it is held that "All of the persons beneficially interested in a trust who are of full age may maintain a bill in equity for the dissolution of the trust and discharge of the trustee, where the case falls within no exception to the rule, and no reason appears why they should not exercise the right of disposing of their property." The decision of the trial court, though, is so clearly just and reasonable that we forbear to consider the subject any further.

The judgment is affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 14, 1912.