NATIONS et al. v. NEIGHBORS et al.
(No. 794.)

(Court of Civil Appeals of Texas. El Paso. Feb. 14, 1918. Rehearing Denied March 7, 1918.)

1. HUSBAND AND WIFE ⬸273(8)—COMMUNITY PROPERTY — SALE BY SURVIVOR — PENDING ADMINISTRATION.

Where property of deceased was left to an executor in trust without action of the probate court, a deed of testator's half of community property by the survivor, before the executor qualified, was ineffective.

2. EXECUTORS AND ADMINISTRATORS ⬸138(1) —POWER TO SELL REAL ESTATE.

Where executor was left the right to "manage and control" and "invest proceeds of rents and sale, all the rest of said property just as if it was his own," the title was in the executor, and he could sell either real or personal property to pay debts, although the will devised all the property to a certain person to be turned over to her when she reached the age of 21 years.

3. WILLS ⬸439—CONSTRUCTION—INTENTION.

The intent of the testator, as expressed in the whole instrument when read in the light of the circumstances surrounding the testator when the will was written, must govern.

Appeal from District Court, Pecos County; Joseph Jones, Judge.

Trespass to try title by Elizabeth B. Neighbors and others against J. H. Nations and another. Judgment for plaintiffs, and defendants appeal. Reversed and rendered.

Williams & Jackson, of Ft. Stockton, and Turney, Culwell, Holliday & Pollard, of El Paso, for appellants. Terrell & Terrell, of San Antonio, W. Van Sickle, of Alpine, and W. A. Hadden, of Ft. Stockton, for appellees.

HARPER, C. J. Appellee, Elizabeth Beatrice Neighbors, a minor, suing by her mother, Aileen M. Brannon (joined by her husband, V. C. Brannon) as next friend, and joined by Aileen M. Brannon, administratrix, with the will annexed of the estate of R. B. Neighbors, deceased, and as guardian of the estate of the aforesaid Elizabeth B. Neighbors, filed suit in trespass to try title to certain lands described in her petition, situated in Pecos county, Tex., against the appellants, J. H. Nations and S. Ross Peters. They further alleged that on or about March 25, 1916, Nations sold said lands with other lands to the appellant Peters, taking as part payment certain vendor's lien notes, and pray for judgment for title and possession of the land and cancellation of the notes referred to above in so far as they may affect the property described, for rents and damages, etc. Defendants answered by plea of not guilty, general denial, and specially that the land in controversy was the community property of R. B. Neighbors and his wife, A. M. Neighbors, at the time of the death of the former; that deceased left a will which named R. S. Neighbors, his brother, independent executor without bond, and which will stipulated that the executor should have full possession and control of his property, the same as if it was his own until his daughter Beatrice Neighbors, plaintiff herein, should arrive at the age of 21 years; that the surviving wife qualified as survivor of the estate and took charge thereof as provided by statute; that the estate at that time owed $18,396.58; that to settle same this land and other property was sold by her, and that the lands in controversy were sold to J. H. Nations & Co. for the sum of $5,000, together with cattle thereon; that the situation was such that the cattle thereon were not salable to advantage without selling both together, etc.; that after the sale a full and complete settlement was had with the executor; that the land sold for its full value; that the surviving wife and the independent executor joined in the deed to said Nations & Co.; that they have paid the taxes, amounting to $815.26, and expended $1,580.70 in defense of suits of adverse claimants, and have paid the state of Texas $617.76 unpaid purchase price; that in case plaintiff recovers they be awarded said amounts, together with the $2,500 purchase price of the lands. The parties filed the following agreed statement of facts:

"It is agreed that the common source of title to the property described in plaintiffs' petition was in R. B. Neighbors, deceased, and that it was community property of deceased at the time he died, and his wife, Aileen M. Neighbors, now Mrs. V. C. Brannon, or Aileen M. Brannon; that R. B. Neighbors died in Pecos county, Tex., on the 23d of November, 1904, leaving surviving him a wife and a minor child, Elizabeth Beatrice Neighbors, at that time about 2½ years of age; that the estate consisted of both real and personal property belonging to the community estate and to R. B. Neighbors, individually, as will be hereinafter set out.

"It is agreed that the land described in plaintiff's petition being the land sued for, was community property of the estate of R. B. Neighbors and Aileen M. Neighbors, now Mrs. V. C. Brannon; that the will attached hereto was duly probated in Pecos county, Tex., and R. S. Neighbors qualified as independent executor, without bond, on March 6, 1905, and was acting as independent executor at the time the contract and deed, copies of which are attached hereto, were entered into between Mrs. Aileen M. Neighbors, individually and as survivor, and R. S. Neighbors, individually and as executor of estate of R. B. Neighbors, deceased, and that at the same time Mrs. Aileen M. Neighbors had qualified by complying with all requirements of the statutes of this state as survivor of the community estate of R. B. Neighbors and herself, on, to wit, January 3, 1905, and was so acting then and at the time of the execution of the deed from her as community survivor and individually, to J. H. Nations & Co. to the land sued for, and until her marriage with V. C. Brannon on January 15, 1906; that the debts owing by the community estate at the time the contract was made and deed delivered amounted to $18,396.58, and the personal property was of value far in excess of that amount; that the purchase price for the one-half interest in the land which is sought to be recovered in plaintiffs' petition was $2,300, which was paid to Mrs. Aileen M. Neighbors by J. H. Nations & Co., and was accounted for by her in her settlement with R. S. Neighbors, independent executor of the estate of R. B. Neighbors, deceased; that the agreement hereto attached between the parties is made a part of this agreement; that Aileen M. Brannon, in acting under the order of the court in this case, is suing as administratrix with the will annexed of R. B. Neighbors, and also as guardian of the person and estate of Elizabeth B. Neighbors; that S. Ross Peters was familiar with the facts at the time of his purchase and claims such title only as J. H. Nations had at the time deed was made to the property described in plaintiffs' petition to S. Ross Peters; that the deed from Mrs. Aileen M. Neighbors and also the deed from R. S. Neighbors, heretofore referred to, was made to J. H. Nations & Co., a firm composed of J. H. Nations and U. S. Stewart, and that thereafter U. S. Stewart conveyed his interest to J. H. Nations, and thereafter J. H. Nations conveyed said property to S. Ross Peters; that J. H. Nations has paid taxes since the purchase, amounting to $407.50, and has paid interest due the state on purchase money amounting to $309; that J. H. Nations brought certain suits to remove cloud from title on the property described in plaintiff's petition, and expended therefor the sum of $700, but said suits were brought without the knowledge or consent of the plaintiff or her representatives, but was necessary to perfect record title to the lands sued for, and were reasonable charges; that at the time of R. B. Neighbors' death he was in peaceable and adverse possession, using, occupying, and enjoying the property described in plaintiffs' petition for three years, and had paid all taxes on same before they became delinquent, and complied with the three-year statute of limitation; that after the purchase of the lands sued for by J. H. Nations & Co. they and J. H. Nations and S. Ross Peters used, occupied, and paid taxes on same before they became delinquent each year so as to comply with the requirements of the statutes of five and ten years limitation, having peaceable and adverse possession during such periods; that section 14,

described in plaintiffs' petition, was the home section of R. B. Neighbors and a portion of it was used and occupied by him and his wife as a home; that at the time the suits were brought to remove cloud from the title to the one-half interest in said lands sued for herein the balance of said land owned by J. H. Nations, same being the other undivided half interest which he secured as the interest of Mrs. Aileen M. Neighbors as her community interest, and to which plaintiffs make no claim, was involved in the suits to remove cloud from title; that the notes mentioned in plaintiffs' petition, a portion of which are secured by vendor's lien upon the property described in plaintiffs' petition, belong to J. H. Nations; that Mrs. Aileen M. Brannon does not live upon any of the property described in plaintiffs' petition, and has not lived there since the sale to J. H. Nations & Co.; that the reasonable rental value of said lands sued for was $104.40 per annum."

Copy of will:

"State of Texas, County of Bexar.

"I, R. B. Neighbors, of Pecos county, state of Texas, being of sound and disposing mind, uninfluenced by any other motive than to dispose of my property as I think right and just, in view of the uncertainty of life and the certainty of death do by this writing make my last will and testament as follows:

"Paragraph 1st: I bequeath my body to the earth from which it sprung and my soul to God.

"Paragraph 2nd: I desire that upon my death that all my just debts be paid and I so direct.

"Paragraph 3rd: I give, will and bequeath to my beloved wife, Aileen M. Neighbors the sum of fifty dollars per month in cash so long as she remains single, and direct that on the first day of each month of every year that the said Aileen M. Neighbors is unmarried my executor to be hereinafter named shall pay to said Aileen M. Neighbors the said sum of fifty dollars, to be used and disposed of by her as she pleases and further direct that if on the first day of any month my executor has not ready cash with which to pay this bequeath that he shall sell some property for the purpose of raising the sum in this paragraph of this my will given my wife and in the event of her marriage I direct that said payments shall cease altogether.

"Paragraph 3rd: I hereby give, will and bequeath to my brother R. S. Neighbors five hundred head of stock cattle to be selected by him as his own property out of any and all cattle I may own at the time of my death.

"Paragraph 4th: I give, will and bequeath to my beloved daughter Elizabeth Beatrice Neighbors after deducting the foregoing bequests of my said wife and my said brother all of the residue and remainder of all property, real, personal and mixed of which I may die possessed and I declare that I am now the owner of above five thousand head of mixed cattle, and one-fourth interest in the Koehler Hotel at Fort Stockton, Texas; two lots and a feed yard in Fort Stockton, Texas; six tracts of land in Pecos county, Texas, in the name of L. C. Serun, and forty head of horses and mules and my homestead on my ranch situated in Pecos county, Texas, about forty miles south of Fort Stockton, Texas, and sundry leases of land. That my cattle brand is N and my horse brand the same and IS on two mules.

"Paragraph 5th: It is my will and I so direct that the said R. S. Neighbors receive the five hundred head of cattle herein bequeathed to him and do with them as he pleases and that my executor pay to my said wife the fifty dollars in cash bequeathed to her in paragraph 2nd of this my will and testament until she marries, when said payments shall cease and to take charge of and manage and control, investing proceeds of sales and rents, all of the rest of said property just as if it was his own until my daughter,

Elizabeth Beatrice arrives at the age of twenty-one years when said property by my executor or his successor shall be turned over to her.

"Paragraph 6th: I hereby appoint my brother R. S. Neighbors, executor of this my last will and testament without bond and direct that no court of law or equity in this state have any jurisdiction or control of my said estate other than to probate and record this my will and testament. The words 'head' and 'of the rest of' on page four of this writing were interlined before signing.

"In testimony of all of which I hereby sign my name in the presence of J. M. Eckford and ——, who sign this writing as witnesses at my request at San Antonio, Texas, on this the 8th day of September, Anno Domini, 1903.

"Witnesses:                    R. B. Neighbors.
  "J. M. Eckford.
  "John Kinahan."

Appellants urge seven assignments attacking the conclusions of law as follows:

First. " '1. I find that Aileen M. Brannon, formerly Aileen M. Neighbors, did not have authority as community survivor to convey the property involved in this suit while there was independent administration pending under a will left by her husband, R. B. Neighbors; R. S. Neighbors having qualified as independent executor in accordance with law.'

Second. " '2. The R. B. Neighbors will gave the executor therein named no power of authority to sell or otherwise dispose of the plaintiff's interest in the lands sued for under the facts shown.'

Third. "1. The plaintiff derived her interest and title in the land sued for under and by virtue of the terms of the will of her father, R. B. Neighbors, which interest vested in her immediately upon the death of her said father."

"I find that the fee simple title to the property was by said will vested in Elizabeth B. Neighbors, a minor, and that the will gave to the executor no authority to convey."

Fourth. "4. Plaintiffs are entitled to recover the title and possession of the land sued for, together with the rents for the use thereof since defendants took possession thereof, upon returning to defendants the amount paid by them to R. S. Neighbors, and A. M. Neighbors, under the contract of June 7, 1905; for the interest in the land in dispute, together with the legal interest thereon to date and all taxes paid and the amount paid the state on the school land purchases."

"12. I further find that the plaintiff, Elizabeth B. Neighbors, is entitled to recover as rent from J. H. Nations the sum of $1,200.60."

Fifth. "6. The defendants are not entitled to recover any sum by reason of suits brought to remove cloud from the title on the property described in plaintiff's petition, because the same were voluntarily made under conditions that cannot form any basis for liability on part of plaintiff."

"10. I further find that, inasmuch as the suits were filed to remove cloud to clear the record title only, and without knowledge or consent of the plaintiff, Elizabeth B. Neighbors, or her representatives, J. H. Nations is not entitled to recover any amount expended in the suits brought by him voluntarily to remove cloud from the title.

"11. I further find that he is not entitled to recover same because it is admitted that the plaintiff owned a good title to the land by limitation."

"16. The court erred in failing and refusing to render judgment for defendant J. H. Nations for the sum of $700, expended by him in clearing record title to the land sued for."

Sixth. "3. I find that if said will of R. B. Neighbors had not given to the executor authority to convey, he could not have conveyed

for a nominal consideration, and that the deed from him to J. H. Nations & Co., conveyed no title.

Seventh. "12. The court erred in his fifteenth conclusion of law filed on March 17, 1917, wherein he found that the lien retained in deed from Nations to Peters should be canceled so far as it affects the lands in controversy, because plaintiffs have no interest in the lands and no right to have said lien canceled."

"17. The court erred in canceling the lien set up and provided in the deed from Nations to Peters, and in holding that same was void."

The propositions present for our determination the following questions: (1) Was the surviving wife empowered by law to sell the land sued for by reason of having qualified under the statute as survivor of the community? Appellees say no, because there was an administration pending. (2) Was the executor empowered to sell the land by the provisions of the will?

The agreed facts show that the testator died November 23, 1904; that the widow qualified as survivor of the community estate January 3, 1905, and that the will was probated, and Neighbors, the executor named in the will, qualified as independent executor without bond March 6, 1905; that the contract of sale to Nations of this land, cattle, etc., was executed by both on June 7, 1905; that a deed was executed by Mrs. Neighbors, individually and as survivor, administratrix for the land in controversy, to Nations and Stewart, September 2, 1905; that on September 19, 1905, Neighbors, as independent executor, executed a deed to Nations and Stewart for this land and many other parcels for the nominal sum of $5; that the purchase price of $2,300 of the land was accounted for to the executor by the surviving widow. From the latter we conclude that the deed by the executor was in confirmation of the sale by the survivor, before mentioned.

[1] Under these facts Mrs. Neighbors had no authority as survivor to sell the land in controversy because of the pending administration. Matula v. Freytag, 101 Tex. 357, 107 S. W. 536.

Upon the death of a person his property immediately vests in some one, either the heirs at law, devisees under the will, or in the trustee or executor.

The legal effect of the provisions of the will was to vest the title to the testator's one-half interest in the executor in trust: First, for the payment of the debts; second, the specified legacy of $50 per month to the surviving widow until marriage; and, third, for the minor child until she reached the age of 21 years upon which event title to vest in her. Haring v. Shelton, 103 Tex. 10, 122 S. W. 13. For this reason the testator's portion of the community estate was placed in the control of the executor without action by the probate court except to probate the will; therefore no title passed by the deed of the survivor.

[2, 3] This brings us to the question: Was the executor authorized by the will to make the sale in question? In construing a will the intent of the testator, as expressed in the whole instrument when read in the light of the circumstances surrounding the testator when the will was written must govern. McMurry v. Stanley, 69 Tex. 227, 6 S. W. 412.

"No particular form of words is necessary to create a power of sale. Any words which show an intention to create such power, or any form of instrument which imposes duties upon a trustee that he cannot perform without a sale, will necessarily create a power of sale in the trustee." 2 Perry on Trusts, § 766; Wisdom v. Wilson, 59 Tex. Civ. App. 593, 127 S. W. 1128.

The third paragraph expressly authorizes the executor to sell property to pay the legacy of $50 per month to his wife, and the fifth authorizes him "to take charge of and manage and control, investing proceeds of sales and rents all the rest of said property just as if it was his own until my daughter arrives at the age of 21 years, when said property by my executor or his successor shall be turned over to her."

We are of the opinion that a proper construction of this will is that it vests the title to all the property in fee, but in trust, in the executor, and none of it in the child until the expiration of the trust, and that, since it charged him with duties which could not be performed without a power of sale, such power must, even in the absence of express words to that effect, be implied, and that the words, "manage and control" and "invest proceeds of rents and sale, all the rest of said property just as if it was his own," more clearly indicate that it was the intention of the testator to confer the power, but surely the power must be implied from the use of such words. Mortgage Co. v. Massie, 94 Tex. 339, 60 S. W. 544; Cook v. Cook, 47 Atl. 732; Robinson v. Robinson, 105 Me. 68, 72 Atl. 883, 32 L. R. A. (N. S.) 675, 134 Am. St. Rep. 537.

Appellee urges that by paragraph 4 of the will the title to the property in question vested immediately upon the testator's death in the testator's daughter. It reads:

"I give, will and bequeath to my beloved daughter * * * after deducting the foregoing bequests to my said wife and my said brother, all of the residue and remainder of all property, real, personal and mixed, of which I may die possessed, and I now declare that I am now the owner of about 5000 head of mixed cattle, and one-fourth interest in the Koehler Hotel"

—and names the property in controversy. Upon the proposition, if we understand it, that since the personal property (cattle) sold for a sufficient sum to cover all the indebtedness, it was not intended by the testator that any other than the personal property should be sold, and they suggest that the independent executor is by law limited, as administrators are, to the sale of personal property first to meet the debts of the estate.

In Dulin v. Moore, 96 Tex. 135, 70 S. W. 742, it was held that where a clause in a will gave certain property to devisees without qualification, and there was a sub-

sequent clause creating a trustee to receive and control same with power to sell, the two clauses should be construed together, and in so doing the proper construction would be that the intention was that the title was devised in trust for the beneficiaries named. But in this case we have the further terms upon which to determine the intent of the testator as to the real estate that he shall manage, control, and invest all proceeds of sales of all the rest of the property just as if it was his own. This vests in the executor a discretion, which by the facts he has exercised in selling this particular land, because it was not practicable nor for the best interests of the estate to sell the cattle without also selling the land upon which they ran, it also became a matter of discretion to sell this land to pay the unpaid purchase money due upon it to the state, and the provision that he shall invest the proceeds, and that "the rest of the property" (that left after paying debts, legacies, expenses, etc.) is to be turned over to his daughter at the age of 21 years, clearly indicates that the executor was not confined to sales of property for the payment of community debts.

We therefore hold that the contract of sale executed by both the survivor and the executor and the confirmation by the executor's deed and the receipt of the purchase price by the latter conveyed title to appellants. The cause therefore must be reversed and rendered for appellants; and it is so ordered.

WALTHALL, J., not sitting.