[L. A. No. 18982. In Bank. Jan. 4, 1946.]

PEGGY ANN MOXLEY, Appellant, v. TITLE INSURANCE AND TRUST COMPANY (a Corporation) et al., Respondents.

458

Ben C. Cohen for Appellant.

Mathes & Sheppard and Gordon F. Hampton as Amici Curiae on behalf of Appellant.

Alfred Wright, Harold F. Collins, Gordon Hall, Jr., and Martin Gendel for Respondents.

SPENCE, J.—By this action plaintiff sought to terminate a testamentary trust prior to the time expressly provided for such termination. General and special demurrers to plaintiff's amended complaint were sustained without leave to amend, a judgment of dismissal was entered, and plaintiff appeals therefrom.

In her amended complaint plaintiff sets forth the establishment and operation of the trust as follows: The trust was created by the will of plaintiff's mother, Mabelle E. Kent, which will was executed on September 19, 1932. Under the terms of the trust the Title Insurance and Trust Company and Sidney R. Kent were named as trustees, with the direction that "the entire net income of said trust estate shall be held and accumulated by said trustees and reinvested by them for the beneficiaries thereof hereinafter named; provided, that any part of said net income may be paid, applied and expended by said trustees in their absolute discretion for support, care and education of" plaintiff. It was also pro-

vided that when plaintiff should reach the age of 35 years, the trust estate and all accumulations thereof should be transferred and delivered to her, whereupon the trustees were to be discharged from the trust; that if plaintiff should die before reaching the age of 35 years, the trust estate and accumulations should be transferred and delivered to any child or children of plaintiff; but in the event plaintiff should die without issue before reaching the age of 35 years, said trust estate should be transferred to any beneficiary designated by the deed or testamentary disposition of plaintiff, and in the absence of such appointment, to certain other named beneficiaries.

Mabelle E. Kent, the trustor, died on October 14, 1932, and on March 16, 1934, the trust estate was distributed to the trustees, who entered upon their duties and continued to act as joint trustees until the death of Sidney R. Kent, plaintiff's father, on March 19, 1942. Since then the corporate trustee has acted alone.

It is next alleged that plaintiff has no living issue, and that she has conveyed all her interest in the trust to her husband "to take effect in the event that plaintiff herein should die without issue surviving her before reaching the age of" 35 years. Named as defendants in this action to terminate the trust are the corporate trustee, Title Insurance and Trust Company; plaintiff's husband, E. D. Moxley; "contingent remaindermen under said trust"; and R. E. Allen, appointed on petition of plaintiff as "guardian ad litem for any child or children now unborn but who may be living at the time of the death of plaintiff herein should said plaintiff die before she reaches the age of 35 years."

It is further alleged in the amended complaint that "notwithstanding the provisions of the trust that the plaintiff should receive the entire trust estate, together with the accumulations thereof, upon reaching the age of 35, it was contemplated by plaintiff's mother at the time of the creation of said trust that should the occasion arise or circumstances exist warranting the earlier termination of said trust for the purpose of relieving plaintiff from any undue hardship or unexpected contingency, the trust could be earlier terminated"; that such "circumstances exist" in that, when the will creating the trust was executed, plaintiff was a schoolgirl 15 years of age, living with her mother, and not capable of looking after her financial affairs; that it was contemplated by the trustor, plaintiff's mother, that if she should die before

plaintiff should attain the age of 35 years, plaintiff would live with her father, Sidney R. Kent, who would provide for her independently of the trust, and therefore it would be unnecessary for plaintiff to receive the corpus of the trust prior to her attainment of the designated age; that the trustor believed that plaintiff's father, then living, would participate in the management of the trust, but by reason of his death, this is no longer possible; that the income from the trust is negligible and wholly inadequate to support plaintiff in a manner consistent with her station in life; that plaintiff's income apart from the trust is similarly insufficient; that by reason of her father's death, plaintiff is unable to have comforts and necessities and to buy a home as she could if her father were alive; that plaintiff is now 26 years of age, happily married and living with her husband, capable of managing the estate left in trust by her mother, and is desirous of purchasing a home; that "the conditions aforesaid have arisen since the creation of the trust . . . and said situation was not contemplated by plaintiff's mother and therefore no provision was made for the same."

It is further alleged that the primary purpose of the trust was to protect plaintiff during her minority in providing for her support, education and maintenance; that such purpose has been accomplished; that the interests of the remaindermen are secondary to those of plaintiff; that the trust is not a spendthrift trust nor made irrevocable by its terms "making it incapable of termination before the full period prescribed for its duration."

It is further alleged that plaintiff's father by will created a trust and gave plaintiff a testamentary power of appointment of the trust estate; that plaintiff for "valuable consideration, did irrevocably . . . appoint as beneficiaries any child or children which might be born to the plaintiff who might be living when she reached the age of 35 years and that . . . by virtue of such irrevocable . . . appointment under the Last Will and Testament of the plaintiff . . . the issue of plaintiff's body, if any there be, should she die before reaching the age of 35 will not be prejudiced . . . and for said reason there is not nor can there be any hostility of interest between plaintiff and such defendant contingent remaindermen." According to the amended complaint the securities in the trust created by plaintiff's mother have a value of about $37,500, while the value of plaintiff's interest in the

trust created by her father is alleged to be "in excess of the sum of one-half million dollars."

Both the corporate trustee and the guardian *ad litem* for the contingent remaindermen demurred to the amended complaint upon the following grounds: (1) Failure to state facts sufficient to constitute a cause of action; (2) lack of jurisdiction of the court; and (3) defect of parties defendant in that unborn contingent remaindermen were not and could not be represented in the action. ■ The order of the court sustaining the demurrers is general in its terms and does not indicate the grounds upon which the court acted. In such situation the law is settled that "If the demurrer is well taken as to any of the grounds stated therein, then the order of the court sustaining the demurrer must be affirmed by the reviewing court." (*Haddad* v. *McDowell,* 213 Cal. 690, 691-692 [3 P.2d 550], and authorities there cited.) Plaintiff's pleading here is vulnerable to defendants' first point of objection above enumerated, and the other grounds of demurrer need not therefore be considered. (*Hays* v. *Temple,* 23 Cal.App.2d 690, 696 [73 P.2d 1248].)

■ In *Fletcher* v. *Los Angeles Trust & Sav. Bank,* 182 Cal. 177 [187 P. 425], the rule is stated as follows at pages 179-180: "Where . . . discretion as to the amount of the income to be devoted to the needs of the beneficiary is vested in the trustee (*Estate of Hemphill,* 180 Pa.St. 95 [36 A. 409]; *In re Stewart's Estate,* 253 Pa.St. 277 [Ann.Cas. 1918E, 1216, 98 A. 569]), or where the effect of the trust is to direct accumulations of the income until a fixed time (*Claflin* v. *Claflin,* 149 Mass. 19 [14 Am.St.Rep. 393, 3 L.R.A. 370, 20 N.E. 454]; *Shelton* v. *King,* 229 U.S. 90 [57 L.Ed. 1086, 33 S.Ct. 686, see, also, Rose's U.S. Notes]), the trust cannot be terminated by the court during the period fixed by the trustor, even where all the beneficiaries are *sui juris* and consent thereto." This is the rule in a majority of American jurisdictions with respect to active trusts (annotation, 123 A.L.R. 1427) and has its foundation in the well-established principle that, within the limits of the law, every man may do as he pleases with his own property. (*Estate of Easterday,* 45 Cal.App. 2d 598, 604 [114 P.2d 669].) ■ Ordinarily, the function of the court with reference to active trusts is not to remake the trust instrument, reduce or increase the size of the gifts made therein or accord the beneficiary more advantage than the donor directed that he should enjoy, but rather to ascer-

tain what the donor directed that the donee should receive and to secure to him the enjoyment of that interest. (4 Bogert, Trusts and Trustees, p. 2936; *Claflin* v. *Claflin*, 149 Mass. 19 [20 N.E. 454, 14 Am.St.Rep. 393, 3 L.R.A. 370].)

It is axiomatic that we must look to the instrument creating the trust to determine the nature, extent and object of said trust. (Civ. Code, § 2253; Restatement, Trusts, § 4; *Ringrose* v. *Gleadall,* 17 Cal.App. 664, 667 [121 P. 407].) ▮ From plaintiff's pleading of the terms of the trust created by her mother's will, it is clear that the testatrix intended to establish an active and subsisting trust for a definite duration, with large powers and duties committed to the trustees. Thus, under the testamentary plan the trustees are expressly invested with "absolute discretion" in their application of the net income to the use of plaintiff until she reaches the age of 35 years, at which time they are directed to transfer "all of said trust estate and all accumulations thereof" to plaintiff and "thereupon be fully discharged." Such plain arrangement for the trustees to retain complete control of the corpus and "absolute discretion" with respect to the income of the trust estate for the stated period would manifestly be violated by a judicial termination of the trust prior to the expiration of such stated period. The expressed wishes of the testatrix must be followed. (*Estate of Yates,* 170 Cal. 254, 257 [149 P. 555].)

▮ That the trust lacks spendthrift features would not authorize its termination prior to the time specified, for the testatrix may have had good reason for desiring that the corpus of the trust should not go to plaintiff until she should attain the specified age. (*Estate of Easterday,* 45 Cal.App.2d 598, 607 [114 P.2d 669].) "The fact that because of the particular wording of a valid trust the legatee may himself impair its efficacy is not a justification for equity so to do." (*Estate of Yates,* 170 Cal. 254, 257 [149 P. 555].) In connection with such situation and the authorities applicable thereto, it is said in 4 Bogert, Trusts and Trustees, at pages 2938-2939: ". . . it can be maintained with some force that the destruction of trusts by court action is anti-social in that it encourages donees to spend and waste in an age where there is an all too clear tendency to extravagance and neglect of the future. The settlor has said that the cestui shall enjoy the gift over a period of years. Shall the court be a party to a violation of that intent and thus encourage the possible squandering of the bounty? Even though the cestui will be

able to squander through the device of sale at a sacrifice, should not the court do what it can to discourage wastage, by refusing the decree of termination, in the hope that the cestui will not think of alienation, or will find it too costly to use, or will be unable to find a buyer for his interest?"

Except under circumstances not shown here, courts cannot substitute their judgment for that of the trustor. In dealing with this question in a similar case, the Supreme Court of the United States said: "Upon what principle, then, is a court of equity to control the trustee by compelling a premature payment? It is a settled principle that trustees having the power to exercise discretion will not be interfered with so long as they are acting *bona fide*. To do so would be to substitute the discretion of the court for that of the trustee. Upon the same and even stronger grounds a court of equity will not undertake to control them in violation of the wishes of the testator. To do that would be to substitute the will of the chancellor for that of the testator." (*Shelton* v. *King*, 229 U.S. 90, 94-95 [33 S.Ct. 686, 57 L.Ed. 1086].)

Plaintiff makes the sweeping allegation that "notwithstanding the provisions of the trust," the testatrix contemplated that "for the purpose of relieving plaintiff from any undue hardship or unexpected contingency, the trust could be earlier terminated." Then follow averments purporting to substantiate plaintiff's two theories for equitable relief: (1) change of circumstances not anticipated by the testatrix; and (2) accomplishment of the objects of the trust. Such claims, imputing to the testatrix purposes inconsistent among themselves and different from the purpose plainly appearing from the terms of the will creating the trust, add nothing to plaintiff's cause of action. Manifestly, they cannot supply a basis for materially changing the testamentary plan which denied to plaintiff the management of the corpus until she should reach the age of 35 years. In her specific allegation as to the "contemplated" indispensability of her father to serve as trustee and in her claim that his death, after she attained her majority and was capable of handling her own affairs, would sustain the present termination of the trust, plaintiff ignores the import of the provisions of her mother's will emphasizing the testatrix' intention that the trust should not so fail, by fixing a definite period for its duration and by making a corporate trustee, as well as plaintiff's father, responsible for its administration. Presumably the testatrix in so pro-

viding had knowledge of the general law of trusts in this state and elsewhere that ''On the death, renunciation, or discharge of one of several co-trustees the trust survives to the others.'' (Civ. Code, § 2288; 2 Scott on Trusts, 1939 ed., § 195, pp. 1057-1060.) These circumstances demonstrate the pertinency here of the statement made in the case of *Shelton* v. *King*, 229 U.S. 90, at page 101 [33 S.Ct. 686, 57 L.Ed. 1086] : ''In the case at bar nothing has happened since the will which was not anticipated by the testatrix.'' In substance, plaintiff's pleading of ''changed conditions'' amounts to no more than the pleading of mere considerations of convenience to herself as ground for frustration of the testamentary design for administration of the trust, and she cannot prevail. As was aptly said in *Shelton* v. *King, supra,* at page 101 : ''There is no higher duty which rests upon a court than to carry out the intentions of a testator when the provision is not repugnant to settled principles of public policy and is otherwise valid.''

The cases in this jurisdiction cited by plaintiff in support of her alleged cause of action possess distinctive features which render them of no avail here. ██ That a court of equity has the power to terminate a dry, simple or passive trust before the time fixed for the termination thereof by the trust instrument cannot be disputed. Thus, in *Eakle* v. *Ingram*, 142 Cal. 15 [75 P. 566, 100 Am.St.Rep. 99] ; and *Moor* v. *Vawter*, 84 Cal.App. 678 [258 P. 622], dissolution of *passive* trusts before the stated time was decreed upon application of the beneficiaries. (Cf. 123 A.L.R. 1442-1443.) The Eakle case at page 17 expressly declared the defendant to have no ''standing in court to dispute [plaintiffs'] application [because] he was a *mere bare trustee.*'' (Italics added.) In the Moor case the provision in the trust instrument for the accumulation of income beyond the age of minority of the petitioning beneficiaries was held void under authority of section 724 of the Civil Code (amended in 1929 to allow such accumulation) ; and with such active duty of the trustee eliminated from consideration the principle governing the termination of a *dry* trust was applied as the basis for according the beneficiaries the relief sought in the light of those facts. (*Moor* v. *Vawter*, 84 Cal.App. 678, 684 [258 P. 622].) In *Gray* v. *Union Trust Co.*, 171 Cal. 637 [154 P. 306], the court observed at pages 640-641 that the plaintiff's application for relief did not concern ''a dry, naked trust, since active duties are imposed upon the trustee during the life of the plaintiff [in

making investments and reinvestments as in its discretion may seem necessary and proper], and a no less active duty upon her death in causing to be determined, should she fail to nominate, those entitled to take the property." The language in that case is directed to the point that remaindermen were created by the trust instrument and they were not before the court, so that a decree of dissolution was improperly entered. But there is nothing in the Gray case which is contrary to the limitations stated in the Fletcher case, *supra*, and it is only in connection with "a dry and naked trust" that the Gray case is cited in *Moor* v. *Vawter*, *supra*, as authority for the trial court's exercise of its discretion in determining whether or not to enter a decree for termination as there sought.

*Whittingham* v. *California Trust Co.*, 214 Cal. 128 [4 P.2d 142], and *Bennett* v. *Nashville Trust Co.*, 127 Tenn. 126 [153 S.W. 840, Ann.Cas. 1914A 1045, 46 L.R.A.N.S. 43], illustrate a limited class of cases in which the court, under certain circumstances, may *modify* the terms of the trust, increase or reduce the trustee's powers, and direct advances of income or principal to the beneficiaries. Thus, in the Whittingham case, plaintiff, by reason of a drastic change in her condition of health following the time of the creation of the trust, was in an admittedly necessitous condition and she based her application for relief upon that ground. The trustees were invested with the power of "management and control of the trust estate," but it does not appear from the opinion exactly what the duties were. Declaring plaintiff to be "the only person beneficially interested" in a certain fraction of the income and principal of the trust estate, the court deemed it proper upon equitable grounds that one-third of plaintiff's portion be distributed to her; but the trust itself was not terminated. In the Bennett case plaintiff, a minor beneficiary, alleged that it was necessary in order to complete her education that she be granted permission to use currently the *income* from certain money left in trust for her under the testator's direction that it "be held . . . with all accumulations" by the executor until she should attain the age of 25. Analyzing at pages 841-842 [153 S.W.] the application as "one which relates merely to the better or more judicious mode of managing and controlling the subject-matter of the trust in order that the design and wishes of the donor may be more completely accomplished [rather than] to devest the trustee of title to the property which is the subject-matter of the trust and vest such title in

direct opposition to the will of the donor," the court concluded that plaintiff should have the advancement of income sought; but again the trust was not terminated.

Akin in character insofar as *modification,* rather than termination, of a trust is concerned is the case of *Adams* v. *Cook,* 15 Cal.2d 352, 353 [101 P.2d 484]. There certain real property was conveyed in trust to be sold at a price fixed in the trust instrument. Active duties relating to the management of the trust property were conferred upon the trustee. The beneficiaries applied for equitable relief in the administration of this property following the discovery of oil thereon, a circumstance which markedly affected its value and which was not contemplated at the time of the creation of the trust. In such situation it was there aptly said at page 361: ". . . where the primary purpose of the trust would not be accomplished by a strict adherence to the terms of the declaration of trust and . . . when it is made to appear in a court of equity, as was shown in the present case, that the benefits and advantages which the trustors desired to confer upon the beneficiaries would not accrue to them by 'a slavish adherence to the terms of the trust,' the court may *modify* the terms of the trust to accomplish the real intent and purpose of the trustors." (Italics added.)

It thus appears that plaintiff's contention that the complaint states a cause of action for the termination of the active trust in question finds no support in any case heretofore decided in this jurisdiction and finds no support in the decisions representing the great weight of authority in this country. On the other hand, both reason and the great weight of authority indicate that courts should respect the admittedly valid and reasonable terms of a trust instrument creating an active trust and should not assume the power to terminate an active trust prior to the time expressly fixed by the trust instrument for such termination. That the trust under consideration is an active trust rather than a so-called dry, simple or passive trust, cannot be disputed and we therefore conclude that the trial court properly determined that plaintiff's complaint fails to state a cause of action for its termination.

While plaintiff's argument is confined to her claim that she is entitled to termination rather than to modification of the trust, certain authorities cited by plaintiff deal with modification and it may be assumed that if plaintiff's complaint

states a cause of action for modification, the demurrer thereto should not have been sustained. We are satisfied, however, that plaintiff's complaint fails to state a cause of action for either termination or modification of the trust.

It is only under peculiar circumstances, such as those exemplified in *Adams* v. *Cook*, 15 Cal.2d 352 [101 P.2d 484], that a court has the power to modify an active trust. (See, also, *Whittingham* v. *Californit Trust Co.*, 214 Cal. 128 [4 P. 2d 142]; *Bennett* v. *Nashville Trust Co.*, 127 Tenn. 126 [153 S.W. 840, Ann.Cas. 1914A 1045, 46 L.R.A.N.S. 43].) In the cited cases, the courts were dealing with exceptional situations in which modification was decreed in order to carry out, rather than to defeat, the primary purpose of the trustor as expressed in the trust instrument. Plaintiff's allegations in the present case have been heretofore considered and we find no such peculiar circumstances alleged here. Plaintiff does not allege facts showing anything in the nature of an emergency or any peculiar circumstances which were not reasonably within the contemplation of the testatrix when she expressly directed that the corpus of the trust should be withheld from plaintiff until plaintiff should attain the age of 35 years. Plaintiff alleges that she desires to purchase a home but her allegations regarding the insufficiency of her income for that purpose fail to show such necessitous circumstances as would warrant a court in disregarding the plain provisions of the trust. And while we do not believe that a trust should be modified merely upon a showing of the beneficiary's desire to purchase a home and a showing of the insufficiency of the beneficiary's income to make such purchase or to support herself in the manner to which she has been accustomed, it is significant to note that plaintiff makes no allegation that her husband, to whom she alleges she is happily married and to whom she may look for support, has not sufficient income to purchase said home and to support her in such manner. Plaintiff's allegations fall far short of presenting a situation such as is disclosed in any of the cited cases dealing with modification of active trusts and, in our opinion, such allegations are wholly insufficient to justify such modification.

The judgment is affirmed.

Shenk, J., Edmonds, J., and Schauer, J., concurred.

TRAYNOR, J.—I dissent. The English courts hold that the sole beneficiary of a trust beyond the age of minority can

demand that the fund be conveyed to him and the trust terminated, even though the trust instrument provides that the enjoyment of the fund by the beneficiary shall be postponed until he has reached a certain age. ''The principle . . . has always been to recognize the right of all persons who attain the age of twenty-one to enter upon the absolute use and enjoyment of the property given to them by a will, notwithstanding any directions by the testator to the effect that they are not to enjoy it until a later age—unless, during the interval, the property is given for the benefit of another. If the property is once theirs, it is useless for the testator to attempt to impose any fetter upon their enjoyment of it in full so soon as they attain twenty-one.'' (*Gosling* v. *Gosling*, Johns. 265, 272; *In re Couturier*, (1907) 1 Ch.D. 470, 473; *Saunders* v. *Vautier*, 4 Beav. 115; see 3 Pomeroy, Equity Jurisprudence, 5th ed., § 991(b).) This doctrine has not been adopted in the United States. (See cases collected in 37 A.L.R. 1420, 1423, 123 A.L.R. 1427.) In the leading case of *Claflin* v. *Claflin*, 149 Mass. 19 [20 N.E. 454, 14 Am.St.Rep. 393, 3 L.R.A. 370], the court refused to follow the English authorities and held that a provision in a trust charging the trustee with the accumulation of income until the sole beneficiary reached an age beyond that of 21 years was binding on the beneficiary. (See *Estate of Yates*, 170 Cal. 254, 256 [149 P. 555].) The Claflin case, however, did not determine whether the trust would have been terminable upon equitable grounds, had the petitioner shown such grounds and not relied solely on the alleged invalidity of the provision restraining his enjoyment of the property. (See *Sears* v. *Choate*, 146 Mass. 395 [15 N.E. 786, 4 Am.St. Rep. 320].) In many American jurisdictions, the rule of the Claflin case has been extended to cover not only a suit to terminate a trust as a matter of course but also a suit based on equitable grounds. (See 123 A.L.R. 1427; 3 Scott, Trusts, § 337.3; 4 Bogert, Trusts, 1002.)

In this state, however, it has been recognized that a court of equity has inherent power to terminate a trust before the end of the period specified in the trust instrument. The beneficiaries of a trust other than a spendthrift trust may secure its termination if all the beneficiaries are *sui juris* and all agree upon its termination, and if a court of equity concludes that the best interests of the beneficiaries will be served thereby. (*Whittingham* v. *California Trust Co.*, 214 Cal. 128, 135 [4 P.2d 142] ; *Gray* v. *Union Trust Co.*, 171 Cal. 637, 641

[154 P. 306] ; *Eakle* v. *Ingram,* 142 Cal. 15 [75 P. 566, 100 Am.St.Rep. 99] ; *Moor* v. *Vawter,* 84 Cal.App. 678, 682 [258 P. 622] ; see, also, *Bennett* v. *Nashville Trust Co.,* 127 Tenn. 126 [153 S.W. 840, Ann.Cas. 1914A 1045, 46 L.R.A.N.S. 43] and cases there collected.) The California cases allowing the termination of a trust in the interest of the beneficiaries are not limited to dry trusts, nor do they make the power of the court to terminate the trust dependent upon the existence of an emergency or upon changed conditions obviating the purposes of the trust that were unforeseeable by the settlor. Thus, in *Moor* v. *Vawter, supra,* the trust instrument provided for the accumulation of income, and it was not alleged that there were unforeseeable developments after the testator's death. The court stated at page 684: "It may not be denied that, generally speaking, the rule obtains as announced in the case of *Gray* v. *Union Trust Co.,* 171 Cal. 637, 641 [154 P. 306], to the effect that the termination of a trust is discretionary with the trial court. (See, also, *Fletcher* v. *Los Angeles Trust & Sav. Bank,* 182 Cal. 177, 180 [187 P. 425].) But such a pronouncement goes no further than does the ordinary principle regarding the general subject of judicial discretion. . . . In the instant case it was stipulated that the beneficiaries were in all respects competent, not spendthrifts, and that all of them joined in the request that the trust be terminated. No reason of any sort based upon facts or equitable considerations was interposed by the trustees which might in any manner militate against the right of the beneficiaries of the trust in the premises." In *Gray* v. *Union Trust Co., supra,* at page 641, this court declared: "It is only when all the parties in interest are before a court, when each is sui [juris], and all join in the application, that a court of equity ever terminates a valid trust. And even when all these circumstances exist, equity does not do so by force of the application, but only when a decree so doing is meet and proper. When such circumstances exist power is in the court of equity to terminate the trust, but with that power is not necessarily imposed the duty so to do. It is still discretionary." The opinion of Justice Henshaw in the Gray case cites for the foregoing rule *Estate of Yates,* 170 Cal. 254 [149 P. 555], in which the opinion was prepared by the same justice. *Estate of Yates, supra,* must therefore be understood as interpreted in the Gray case.

Defendant relies on *Fletcher* v. *Los Angeles Trust & Sav. Bank,* 182 Cal. 177, 179, 180 [187 P. 425], for the proposition that this state follows the rule that if the trust instrument

directs the accumulation of the income until the beneficiary has reached a certain age, the trust cannot be terminated by the court before that time, "even where all the beneficiaries are *sui juris* and consent thereto." The passage in the Fletcher case to that effect, however, was only a dictum in that case. The Fletcher case involved a trust instrument that provided, not for accumulation of income, but merely for the administration of the trust property and the distribution of income by the trustee. It was held that the trust would have been terminable but for the contingent interest of unborn issue. This court declared in that case that "The only discretion vested in the trustee" under the trust instrument in question was "as to the nature and character of the investments to be made" and that such discretion of the trustee does not "take the trust out of the general rule," which the court stated at page 179: "Where the beneficiaries of the trust are all *sui juris*, and seek the termination of a trust, a court of equity may terminate the same even if the period for such termination fixed by the instrument creating the trust has not yet arrived.' The court recognized that under this rule the "termination of the trust is, however, discretionary with the court. (*Gray v. Union Trust Co.*, 171 Cal. 637 [154 P. 306].)" (182 Cal. 177, 180.) The dictum in the Fletcher case had no bearing on trusts in this state for the accumulation of income after a beneficiary had reached majority, for under sections 723 and 724 of the Civil Code, not amended until 1929 (Stats. 1929, p. 276), a trust instrument could not validly provide for the accumulation of income after the beneficiary had reached majority.

New York and other states by statute read a spendthrift clause into any trust whose income is designed for an individual beneficiary. (See 4 Bogert, Trusts, 2932-2933; 1 Scott, Trusts, 750; Griswold, Spendthrift Trusts, 194.) Courts in these states refusing to terminate such a trust before the time fixed in the trust instrument simply confirm the rule that spendthrift trusts are not terminable by court decree. In this state a trust is not a spendthrift trust if the trust instrument does not provide that the beneficiary's interest shall be unassignable and not subject to the claims of his creditors. (Civ. Code, § 867; *Fatjo* v. *Swasey*, 111 Cal. 628, 637 [44 P. 225]; *Blackburn* v. *Webb*, 133 Cal. 420, 422 [65 P. 952]; see Griswold, Spendthrift Trusts, 129; 25 Cal.Jur. 324.) By declaring not terminable a trust like the present one, which contains no

spendthrift clause, the court would prevent a beneficiary from using the trust funds for urgent needs or highly desirable purposes. It would not, however, prevent him from selling his equitable interest in the trust, and since a purchaser of that interest could not obtain the trust property before the end of the period specified in the trust instrument, it is not likely that he would pay a price commensurate with the present value of that interest. As has been aptly said: ''Property sold in presenti, but not to be delivered for many years, must be sold at a sacrifice, and when the seller is a person of the character for whom such restraints are supposed to be useful, the chances are that it will be sold at a very great sacrifice. In fact, the law, by sanctioning such restraints, is exposing inexperienced youth to those 'catching bargains' against which the old-fashioned equity always strove to protect it.'' (Gray, Restraints on Alienation, 2d ed. § 124(n); see, also, *Sears* v. *Choate,* 146 Mass. 395, 398 [15 N.E. 786, 4 Am.St.Rep. 320]; Scott, *Control of Property by the Dead,* 65 U. of Penn. L.Rev. 527, 632, 648-650.) It is absurd to refuse termination in such a situation for fear of frustrating the trustor's intent, when the net result of the refusal is to continue the trust for the sole benefit of the trustee. (46 Yale L.J. 1005, 1011.) Moreover, the assets of the trust may be distributed to the beneficiary and the trust terminated by an agreement between the beneficiary and the trustee securing the latter's full discharge. (See 4 Bogert, Trusts, 2938.) To preclude the same result by court decree is to ''penalize cestuis who are overconscientious and seek the instruction of the court, or who have a trustee who is anxious to get the commissions from the trust and hence will not consent to termination.'' (Bogert, *ibid.*)

When exercising its discretion as to whether a trust should be terminated, a court weighs the importance and urgency of the interests calling for the termination of the trust and determines whether or not the character of the trust property is such that, in view of the circumstances of the case, its administration by the trustee is called for. It considers whether the trust would otherwise end within a short time; whether the termination of the trust would defeat a particular purpose of the trust, such as withholding the administration of the trust property from the husband of a woman beneficiary (see *In re Cornil's Estate,* 167 Iowa 196 [149 N.W. 65; L.R.A. 1915E 762]; 43 Yale L.J. 410); whether the beneficiaries have

sufficient experience to manage the trust property (see *Eakle* v. *Ingram*, 142 Cal. 15, 16 [75 P. 566, 100 Am.St.Rep. 99]; *Moor* v. *Vawter*, 84 Cal.App. 678, 684 [258 P. 622]); whether they are free from propensities that would endanger a reasonable management of the trust property (see *Estate of Easterday*, 45 Cal.App.2d 598, 603, 604, 607 [114 P.2d 669]); whether the circumstances that give rise to their interest in terminating the trust were probably anticipated by the trustor (*Fletcher* v. *Los Angeles Trust & Sav. Bank, supra,* p. 180; *Whittingham* v. *California Trust Co.,* 214 Cal. 128 [4 P.2d 142]; see *Adams* v. *Cook,* 15 Cal.2d 352 [101 P.2d 484]); and whether the trust was intended primarily for the purpose of accumulating the income or for the administration of the trust property. (*Fletcher* v. *Los Angeles Trust & Sav. Bank, supra;* see, also, *Woestman* v. *Union Trust & Sav. Bank,* 50 Cal.App. 604, 607 [195 P. 944].)

There is no hard and fast rule preventing the termination of a trust if it is not proved that the settlor did not anticipate events subsequent to the creation of the trust. The principal purpose of a trust is to benefit the beneficiaries, and presumably a court will better serve the intentions of the settlor by weighing the actual interests of the beneficiary of a trust in its termination against the benefits intended by its continuance than by insisting that adequate proof be offered that the present circumstances could not be or were not anticipated by the settlor. ''The majority American position to the effect that non-spendthrift trusts are indestructible as long as they are active and have a purpose to be performed has the appearance of strength, in that it stresses respect for the intent of the settlor, harmony with the spendthrift trust doctrine, and refusal by the courts to make wills and deeds; but it seems in fact an impractical rule which brings about an adherence to theory but no practical individual or social benefit.'' (4 Bogert, Trusts, 2940.)

Nor is there any hard and fast rule that a trust providing for the accumulation of income cannot be terminated by a court. Although such a trust may now be valid (Civ. Code, §§ 723, 724) it does not follow that it cannot be terminated. The settlor intends by such a trust to secure the beneficiary's well-being in the future, but it might be shown to the satisfaction of the court that the present needs of the beneficiary outweigh his interest in future security. Moreover, in the present case the settlor did not provide for an obligatory

accumulation of income, for the will provides that in the discretion of the trustees the income may be accumulated or paid to the beneficiaries. (No power was given to invade the corpus.) The will does not reveal whether this provision was made to empower the trustees to use only part of the income for the current requirements of the beneficiary, or to have the income accumulated while plaintiff was very young for distribution to her when she was older and her needs were greater, or whether it was made to avoid controversies and possible litigation as to what is income and what is corpus. If a provision in a will giving the trustee discretion to accumulate income precluded a court from determining that the corpus of the trust should be conveyed to the beneficiary and the trust terminated, the court would be bound to a rule of thumb regardless of the reasons for giving such discretion to the trustee. Whether the income can be accumulated or must be currently distributed affords no ground for deciding the entirely unconnected question whether the corpus of the trust can be distributed to the beneficiaries before the time stated.

The majority opinion holds that the trust in the present case could be terminated if it were a dry trust but that since it is an active trust it must continue until plaintiff has reached the age of thirty-five. It has long been recognized in California, however, that active trusts can be terminated on equitable grounds before the expiration of the period fixed in the trust instruments. This court has defined a dry or passive trust as follows: "The term 'dry trust' refers to a trust wherein the trustees would have no actual responsibilities as such and no active duties to perform." (*Estate of Shaw,* 198 Cal. 352, 363 [246 P. 48].) According to the Restatement of Trusts, "A trust is not active unless the trustee has by the terms of the trust affirmative duties to perform. If his sole duties are negative, that is not to interfere with the beneficiary in his enjoyment of the property, the trust is passive." (Restatement, Trusts, § 69, Comment a.) In *Eakle* v. *Ingram,* 142 Cal. 15 [75 P. 566, 100 Am.St.Rep. 99], the trustee was to hold certain real property and "to pay the rents, issues, and profits thereof" to named beneficiaries. Since the beneficiaries were entitled only to net income during the trust period, the duty of managing the property, as well as that of paying the income to the beneficiaries, was imposed on the trustee. The court used the term "bare trustee" in that case, not to indicate that the trust was a dry one, but as is evident

from the context (142 Cal. at p. 17), to emphasize that a trustee with an interest only in his compensation cannot object to the termination of the trust as can a person interested as a beneficiary in the trust property. In *Moor* v. *Vawter*, 84 Cal.App. 678 [258 P. 622] "the testator left all his property in trust" to be administered by the trustee for the benefit of the widow of the testator during her life, and, if she died within ten years after the testator's death, for the benefit of the sons of the testator until the expiration of such ten-year period. The trust was terminated during the ten-year period. The invalidity of the provision for the accumulation of income under the law at that time did not affect the active character of the trust but only the nature of the duties to be performed by the trustee. It is undisputed that management of the trust property and distribution of the net income thereof are duties of the trustee of an active trust and that the active character of a trust does not depend on the trustee's duty to accumulate the trust income. In *Whittingham* v. *California Trust Co.*, 214 Cal. 128 [4 P.2d 142], the trust was terminated as to one-third of the share of one of the beneficiaries. The trustees were charged with the management and control of the trust estate, the corpus of which consisted of a large number of mortgages, trust deeds, and mortgage guaranty certificates.

It is clear not only that the foregoing cases involved active trusts, but, as is evident from the quotation in *Eakle* v. *Ingram, supra,* from Underhill on Trusts and Trustees, and the original context of the quotation, that the court had no doubt that active trusts could be terminated upon equitable grounds before the expiration of the period fixed in the trust instruments.

The majority opinion regards the Whittingham case as illustrative of a limited class of cases "in which the court, under certain circumstances, may *modify* the terms of the trust, increase or reduce the trustee's powers, and direct advances of income or principal to the beneficiaries." There is no essential difference, however, between a modification of a trust by reducing the period provided for its existence and other modifications of important provisions. The court in the Whittingham case made no differentiation between the partial termination of a trust and its complete termination. On the contrary, relying on *Moor* v. *Vawter, supra,* and *Fletcher* v. *Los Angeles Trust & Sav. Bank,* 182 Cal. 177 [187 P. 425],

it based its decision on the court's power to terminate trusts on equitable grounds.

Plaintiff has adduced equitable grounds for the termination of the trust, which are sufficient in my opinion to allow her to go to trial. The facts are simple. A mother who lived separately from her husband, a successful businessman, made a testamentary trust to provide for the future security of her fifteen-year-old daughter, then living with her. There was then the possibility that this trust would be the only source of the daughter's future security. The father's wealth was subject to the contingencies of his business: he might remarry and in his will provide for others than his daughter. Had this situation remained unchanged, the continuation of the trust might well have served the best interests of the daughter. The father, however, has died leaving property to plaintiff under a trust that makes it unnecessary for her to depend entirely on her mother's trust for future security, and her present income is insufficient to purchase and maintain a home on the scale to which she has been accustomed.

Defendant contends that even if the trust could be terminated if plaintiff were the sole beneficiary, the termination is precluded by the contingent interest of her unborn issue, who would be entitled to the trust property should plaintiff die and leave issue surviving before reaching the age of thirty-five. Plaintiff, who was 26 years old when her first amended complaint was filed in December, 1943, is without issue. She has exercised her right under the will to determine who shall be entitled to the trust fund should she die without issue before reaching the age of thirty-five years. In order to secure her unborn issue, should this trust be terminated and should she then have issue and die before reaching the age of 35 years, plaintiff has exercised in favor of her unborn issue a power of appointment given her as beneficiary of the trust created by the will of her father. Plaintiff has alleged that the value of the benefits that her issue would enjoy under this power of appointment greatly exceed the value of their interest in the present trust, and that therefore her issue would be adequately protected against any loss that might result from the termination of the trust.

A court of equity may frame its decree to suit the exigencies of the case. (*Wills* v. *Porter*, 132 Cal. 516, 521 [64 P. 896]; *California etc. Co.* v. *Schiappa-Pietra*, 151 Cal. 732

[91 P. 593]; *Thakrah* v. *Haas*, 119 U.S. 499, 502 [7 S.Ct. 311, 30 L.Ed. 486]; see 10 Cal.Jur. 559; McClintock, Equity, 42, 255.) It may make the termination of·a trust conditional upon the furnishing of a fair equivalent for the contingent interests therein. (*In re Colgan*, 19 Ch.D. 305 (1881): see 2 Scott, Trusts, 853.) Its power in this respect is comparable to other powers affecting contingent interests. Thus a court, by approving a compromise, may diminish the contingent interest of unborn issue in a trust. (*Loring* v. *Hildreth*, 170 Mass. 328 [49 N.E. 652; 64 Am.St.Rep. 301, 40 L.R.A. 127]; *Fisher* v. *Fisher*, 253 N.Y. 260 [170 N.E. 912, 69 A.L.R. 918]; *Copeland* v. *Wheelwright*, 230 Mass. 131 [119 N.E. 667]; see *Mabry* v. *Scott*, 51 Cal.App.2d 245, 257 [124 P.2d 659].) It may allow, on grounds of necessity or "high expediency," the sale of trust property in the absence of a power of sale in the trust instrument, despite a contingent interest of unborn or unascertained persons. (*Mayall* v. *Mayall*, 63 Minn. 511, 514 [65 N.W. 942]; *Beliveau* v. *Beliveau*, 217 Minn. 235 [14 N.W. 2d 360].) Courts have even approved the destruction of the contingent interest when it is "so remote, and its actual enjoyment so improbable that its retention would appear to be nothing more substantial than a film of mist."

It cannot be held that the unborn issue were not represented or that the trial court was precluded from terminating the trust because the guardian ad litem demurred to plaintiff's action. A guardian *ad litem* may be appointed under the inherent powers of a court of equity to safeguard the interest of unborn issue in a trust. (*Mabry* v. *Scott*, 51 Cal.App.2d 245, 256 [124 P.2d 659], and cases there cited.) He is not free to give or withhold arbitrarily or capriciously his consent to the termination of the trust; he must act reasonably in protecting the interests that he represents. At all times he is under the control and subject to the orders of the court (see, 99 A.L.R. 747), for "The court is, in effect, the guardian— the person named as guardian *ad litem* being but the agent to whom the court in appointing him (thus exercising the power of the sovereign state as *parens patriae*) has delegated the execution of the trust." (*Cole* v. *Superior Court*, 63 Cal. 86, 89 [49 Am.Rep. 78].) The guardian ad litem in the present case opposed plaintiff's application to terminate the trust on the grounds that the contingent remaindermen were indispensable parties and that a trust cannot be terminated if

there are persons yet unborn who have a contingent interest in the trust. He might not have done so had he been properly instructed. In any event, the final determination as to whether or not the contingent interest of the unborn issue would be adequately protected rests with the court.

Since the allegations of plaintiff's complaint set forth a prima facie case, the demurrer should not have been sustained.

Gibson, C. J., and Carter, J., concurred.

Appellant's petition for a rehearing was denied January 31, 1946. Gibson, C. J., Carter, J., and Traynor, J., voted for a rehearing.