[Civ. No. 10897. Third Dist. June 21, 1965.]

Estate of EDYTHE WARD NICELY, Deceased. AUBREY NICELY HERRINGTON, Petitioner and Appellant, v. NATIONAL FOUNDATION FOR INFANTILE PARALYSIS et al., Objectors and Appellants.

Carl Kuchman for Petitioner and Appellant.

Milton H. Gordon, Thomas J. Cunningham, Knight, Boland & Riordan, John H. Riordan, Bledsoe, Smith, Cathcart, Johnson & Rogers, Robert S. Cathcart, Vaughan, Paul & Lyons, John Lyons and Wilkie Courter for Objectors and Appellants.

PIERCE, P. J.—This is an opinion after rehearing granted from the opinion filed April 5, 1965.

 Edythe Ward Nicely by her will left substantially all of her estate in trust, $250 per month to be paid by the trustee to her daughter, Aubrey Nicely Herrington (also her sole heir at law), for life, the residue upon her death to go to five charities, four of which were nonexempt under Probate Code section 41. That section provides that if more than one-third of a total estate is left to nonexempt charities by a testator leaving heirs of certain classes (including children) the excess falls into intestacy and goes to the specified heirs. The trust declaration here contained a "spendthrift" restriction. It also included a provision giving the trustee power to invade corpus in an emergency affecting the daughter. The probate court reasoned that the possible exercise of that right made it impossible to determine until the daughter's death whether or not the gifts to nonexempt charities would exceed one-third and therefore held that distribution of the intestate portion of the estate must await that death. Since the daughter is well-to-do exercise of the right to invade corpus is unlikely, although, of course, possible. It is more probable that the nonexempt charitable bequests will *greatly* exceed one-third and the result of the court decree, therefore, from a practical standpoint is that the purpose of Probate Code section 41 will be defeated (since under the decree seven-fifteenths of the estate when distributed would go to persons having no claim upon the testatrix' bounty). For the same

reason the will of the testatrix may be said to have been frustrated.

On this appeal we reject the contention that this result can be avoided by allowing the daughter to renounce the entire trust. We hold, however, that it can be avoided if (1) the daughter waives the right to invade corpus and (2) petitions the probate court for an order authorizing the purchase of an annuity which will pay her $250 per month for life. (3) The same court order can preserve the ''spendthrift'' restriction of the trust. (4) All of its purposes having been fulfilled, the trust can then be terminated, and (5) the balance of the estate can then be distributed. Appellant, in her briefs, has expressed a willingness to waive and petition the court as hereinabove in (1) and (2) stated.

The reasons for our conclusions will be developed hereinafter in this opinion.

The testatrix died leaving an estate, the appraised value of which is $301,746.40. Her only heir at law is her daughter, appellant Aubrey Nicely Herrington, a woman now 58 years of age. The will of the testatrix, after making insubstantial specific bequests, leaves the residue to a bank in trust, directing the trustee to pay from income $250 per month to the daughter, Mrs. Herrington, for life, with a discretionary power in the trustee to invade corpus and increase payment to the life beneficiary if necessary in an emergency and only while the emergency endures. Also included in the trust provisions of the will is a standard ''spendthrift'' provision.[1] By the terms of the will the trust terminates upon the death of Mrs. Herrington, and the trust estate residue is to be distributed to five named charities ''share and share alike.''

Four of these charities are nonexempt from the restrictions of Probate Code section 41 which state that when a decedent leaves heirs of certain specified classes (of which a daughter is one) charitable devises and bequests ''may not collectively exceed one-third of the testator's estate'' as against such specified heirs ''who would otherwise, as aforesaid, have taken the excess over one-third, and if they do, a pro rata deduction from such devises and legacies shall be made so as to reduce

---

[1] ''NINTH: The corpus and/or income of the trust estate shall be inalienable by the beneficiary thereof, and shall not be subject to the possible claims of creditors; and any payments or distributions to the beneficiary shall be made only to said beneficiary personally, and the same shall not be made to any other person or persons by reason of any transfer, or assignment, or operation of law, or otherwise, of any supposed or possible right of said beneficiary to receive the same.''

the aggregate thereof to one-third of the estate."[2] The section then provides: "All property bequeathed or devised contrary to the provisions of this section *shall go to the [specified heirs] of the testator, if and to the extent that they would have taken said property as aforesaid but for devises or legacies.*" (Italics supplied.) By Probate Code section 42 certain public and constitutionally tax-exempt entities are exempted from the restrictions of Probate Code section 41. The University of California is one of these. By Mrs. Nicely's will the Regents of the University of California are to receive the fifth share of the residue of the testamentary trust. This gift is to be used for scholarships.

During the probate of the will Mrs. Herrington petitioned the probate court for an order determining heirship and for declaratory relief. The matter was heard and argued, the court filed a memorandum opinion, findings were made and, on November 12, 1963, an interlocutory decree and judgment was filed.

The essential findings of the court were: (1) that the entire residue of the estate (after paying the specific bequests and costs of administration, including the federal estate and California inheritance taxes) must be delivered to the trustee named in the will, the trust funds to be managed by it, with $250 per month to be paid to Mrs. Herrington from income for life (subject only to augmentation in the event of an emergency as specified in the will). The court also found (2) that the trustee's right of invasion of corpus mentioned above made it impossible to determine whether there would ever be any residue of the trust estate, or if so whether the shares of the nonexempt charities collectively would, or would not, exceed one-third thereof. Therefore, it found further distribution of the estate must await the death of Mrs. Herrington. The court further found that when Mrs. Herrington dies the residue of the trust, if any, will then be distributed three-fifteenths (i.e., one-fifth) to the Regents of the University of California, five-fifteenths (i.e., one-third) to the private charities collectively, and seven-fifteenths (i.e., two-thirds less one-fifth) to the *heirs or assigns* of Mrs. Herrington.

The court's decree made the following provision for pay-

---

[2]The four nonexempt charities are: The National Foundation for Infantile Paralysis, The Heart Association of San Francisco, The California Society for Crippled Children and Adults, and The Sisters of the Holy Family of San Francisco. They will be referred to hereinafter as the "nonexempt charities."

ment of the taxes: "That the Federal Estate Taxes and the California Inheritance Tax on the intestate portion, if any, of the estate be charged against the person or persons entitled to such portion and not as an expense of the administration of the estate."

Mrs. Herrington appeals from the decree. She challenges deferment of distribution of the intestate portion of the estate until the date of her death. She argues that deferment will result in the distribution of such portion not to her but to others not within the purview of Probate Code section 41. She also disputes the probate court's asserted disregard of the testatrix' expressed intent that all taxes be paid as expenses of administration. Those are her two principal contentions; another will be noted.

The four nonexempt charities, as "parties aggrieved," join with appellant in the first of her contentions. They find painful the fact that, tacked onto the substantial reduction they must admittedly suffer because of the restrictions of Probate Code section 41, they will receive nothing until Mrs. Herrington dies—an event which, since that lady was born in January 1907, the mortality tables tell us cannot be expected to occur before 18 years (1983), and which conceivably could be deferred until 1990-1995 if the strides of medical science in prolonging human life outrace atomic and other perils. They also protest the fact that, since the decree in effect limits the amount which the nonexempt charities can collectively receive to one-third of the value of the distributable estate at the time it is turned over to the trustee, they will not enjoy any accumulations to the estate when, if the decree stands, it will be finally distributed upon Mrs. Herrington's death.

The University of California is undismayed. By the terms of the decree it will ultimately receive its full one-fifth with accumulations. It does not mind the delay. The tax provision interpretation accords with its views. It is an unaggrieved respondent.

Before discussing Mrs. Herrington's principal assignments of error, we refer first to her contention that since paragraph "Tenth" of the will provides that the five charities therein named shall take "share and share alike" the shares of the nonexempt charities should be limited to one-fifth of one-third (i.e., one-fifteenth each). Under this theory the collective distribution to the nonexempt charities would be four-fifteenths of the residue instead of five-fifteenths. No authority is cited to support this interpretation and its reason-

ing is unclear to us. Probate Code sections 41, 42 and 43 contain no provisions suggesting such a division, nor would it accord either with the expressed intent of the testatrix or that which reasonably might have been attributed to her had she realized that part of her charitable bequests must fail.

The principal contentions of Mrs. Herrington have more substance. It is argued that if it were not for the emergency corpus invasion powers of the trustee[3] the value of the intestate portion of the estate would be actuarially determinable and it would be shown that the nonexempt charitable bequests exceed one-third; that the *amount* of such excess also would be shown. It is then asserted that since, as a matter of fact, there is little likelihood that the power of corpus invasion will ever be exercised, the courts, to avoid defeating the purposes of Probate Code section 41 and the frustration of the testatrix' intent as well, should consider as legally certain that which is practically certain.

There was evidence at the hearing establishing that Mrs. Herrington has been married since 1936 to George Herrington, a professor at Sacramento State College. The husband's salary is $13,020 a year. She herself is a teacher in the public schools with general and special credentials and a salary of $4,140 per year. She has a parking lot in San Francisco with a value of $25,000, and from which she derives an income of $200 per month. She and her husband have securities of $42,085 from which they enjoy yearly dividends of $1,591, and the couple has bank accounts of $4,688.83. Both are members of retirement systems and have a paid-in balance of $17,526.61 therein. Mrs. Herrington is the beneficiary of $8,000 of paid-up life insurance on the life of her husband. Upon retirement her husband will receive a pension of $269.76, increasing to $454.79 at age 65. Both are covered by sickness, accident and disability insurance. They own an unmortgaged home valued at $33,000 and have no debts.

---

[3]Paragraph Eighth of the will provides in part: ''I have already made substantial gifts to my daughter, which is the reason why I have established this trust to protect her against any unforeseen situation which might find her deprived of other means of support. Should this monthly allowance be deemed by my Trustee to be inadequate in the light of all circumstances of a financial nature which might arise in the future, my Trustee is given sole discretion to increase the monthly allowance provided for herein. Any increase, however, should only be considered in exceptional circumstances and should not continue beyond the emergency that may have arisen. . . .'' (Power is then given to the trustee to make such payments, if necessary, from principal.) We will refer to this paragraph hereinafter as the power or right of ''corpus invasion.''

Notwithstanding those facts, and no matter how remote the chances may be that an emergency will arise making recourse to the corpus of the trust necessary, the testatrix must also be presumed to have understood the remoteness of the possibility. She also knew that remote possibilities can, and often do, occur, and it was with these things in mind that the testatrix drew her will. Therefore if compliance with the wishes of the testatrix when she drew the will were our sole consideration we would have to deny appellant's contention. But, as we shall stress hereinafter, there are other overriding considerations which justify judicial disregard of the testatrix' wish as expressed in her will to insure that a greater frustration of her interests will not occur.

The decree of the probate court has harsh consequences.[4] As indicated above, it results in depriving Mrs. Herrington of the seven-fifteenths of the testatrix' estate which the Legislature in Probate Code section 41 declares that she should have; it gives that seven-fifteenths share to persons unknown to the testatrix and who, it can be said with assurance, are not the natural objects of her bounty (namely, the heirs and assigns of Mrs. Herrington); its effect upon the nonexempt charities has already been noted above.

How can these undeniably unfortunate results be avoided? The nonexempt charities offer a solution: They ask this court to recognize that "a legatee has the power and right to renounce a legacy and to take, instead, that to which he is entitled under the laws of succession." Counsel speak of the *renunciation* of a trust as being distinct from a *termination*. ■ They concede a trust with a spendthrift provision cannot be terminated. The rules applicable to termination are: The beneficiaries of a trust who are all *sui juris* may seek its termination but only when all of the following conditions are met: (1) all beneficiaries of the trust must join in the consent; (2) the trust involved must be one which does not contain "spendthrift" limitations; (3) there must be no provision in the will evidencing an intention by the trustor that a power of termination shall not exist. (*Fletcher* v. *Los Angeles Trust & Savings Bank,* 182 Cal. 177 [187 P. 425]; *Estate of Easterday,* 45 Cal.App.2d 598 [114 P.2d 669].)

■ But, say the nonexempt charities, these rules do not

apply to renunciation. No one is compelled to accept a gift. If, therefore, the only person for whose benefit a trust is created shall renounce the gift there is no reason why the trust should come into being at all. (*Moxley* v. *Title Insurance & Trust Co.*, 27 Cal.2d 457, 465 [165 P.2d 15, 163 A.L.R. 838] ; Civ. Code, § 871.)

This is a proposition which no one could dispute under circumstances where the renunciation not only eschews the benefits of the trust but also receipt of the trust *funds*. But to renounce a trust only to effect transfer of its moneys into the intestate portion of an estate is quite another matter. That is not a renunciation; it is only an evasion of the trust's restrictions. And a rule permitting such manipulation would have monstrous implications. One cannot even guess how many wills are now in existence containing testamentary trusts with spendthrift provisions for the protection of improvident sole beneficiaries who are also the sole heirs at law of testators still alive. Under the rule sought here all such trust restrictions could be wiped out by the simple sleight-of-hand of renunciation followed by a retrieval according to the laws of intestate succession.

We cannot authorize such a renunciation. As a matter of fact, it is not entirely clear that Mrs. Herrington's agreement to make such a total renunciation was unconditional. ▮ She has, however, offered to waive the right of corpus invasion, and since it is the existence of this provision which makes the value of the trust estate indeterminable (and therefore the value of the nonexempt charitable bequests indeterminable) a waiver of the right of corpus invasion seems to us to pave the way to an equitable distribution of the estate. And we can perceive no legal reason why appellant should not be accorded the right to waive the provision, several compelling reasons why she should be permitted to do so: (1) The provision was exclusively for her benefit, and it was not a part of the "spendthrift" provision of the trust. Waiver of the right, therefore, is not, as the renunciation of the entire trust would have been, simply to carry out an oblique evasion of the restrictions of the trust. (2) The right given was only to be exercised in an unlikely-to-occur emergency and the distributive share which Mrs. Herrington will receive as a result of the waiver will bring her sufficient added insurance against possible future financial emergencies to outweigh the loss of the corpus invasion right. (3) Although it defeats an expressed wish of the testatrix, no one can say it defeats the intent

she would have had had she realized the effect of the provision. When Mrs. Nicely made her will she was obviously uninformed that seven-fifteenths of her estate must go into intestacy and that by inserting a corpus invasion provision therein that portion would go to her daughter's heirs and assigns, persons who, as stated above, have no claim upon her bounty. It does not make sense, therefore, to deny a right of waiver upon the ground that it defeats a testator's intent when, under the real circumstances existing, the intent is not known, cannot possibly be ascertained, and when the denial of the right of waiver would bring about a result antipodal to the testator's probable wishes.

We hold, therefore, that the waiver of the corpus-invasion right is valid. Since it is valid it appears that, with the cooperation of Mrs. Herrington, the law provides the machinery for the present distribution of the estate in a manner which will carry out the mandate of Probate Code section 41 and which will also carry out the probable intent of the testatrix to the extent that that law allows.

As we have seen, the basis of the probate court's decree was that because of the existence of the trust it could not be determined until Mrs. Herrington's death whether or not the value of the bequests to the nonexempt charities exceeded one-third, and therefore it could not be determined whether Probate Code section 41 had been violated. *Estate of Campbell,* 175 Cal. 345 [165 P. 931], *Estate of Gorchakoff,* 108 Cal.App.2d 44 [238 P.2d 121], *Estate of Brown,* 140 Cal.App.2d 677 [295 P.2d 566] and *Estate of Hughes,* 202 Cal.App.2d 12 [20 Cal. Rptr. 475], are cited as cases where decrees have held up distribution because trust provisions made determination of the applicability of Probate Code section 41 impossible until the expiration of the trust. Those cases are distinguishable because in all of them either the existence of contingent beneficiaries of the trust or the amounts inheritable by legatees of the trust or the amounts inheritable by legatees of the trust residuum, made predetermination of violation of Probate Code section 41 *actually* impossible.

Here, with the waiver of the corpus invasion right, both the value of the life estate and of the charitable bequests are presently actuarially determinable. (Also, as will be shown hereinafter, the purchase of an annuity will make *actual* values determinable.) With these determinations certainty that Probate Code section 41 has been violated emerges. With that

emergence rules of law which have to do with the ascertainment of a testator's intentions and of carrying out that intent *under circumstances where no policy of statutory law is thereby circumvented* must give way. █ Because, where the provisions of a will clash with a statute restricting the power to make a will, the wishes of the testator must bow to the wishes of the Legislature.

█ The right to make a will is not a natural right, not a right of property. Originating in the Statute of Wills (32 Hen. VIII, Ch. 1, July 20, 1540), it is an ancient right but not inalienable. The testamentary act is not protected by any constitutional provisions; it is purely statutory; subject to complete control by the Legislature. (53 Cal.Jur.2d, Wills, § 2, p. 221; 1 Page on Wills, (Bowe-Parker Rev.) § 3.1, p. 62; *Estate of Burnison*, 33 Cal.2d 638 [204 P.2d 330].) The latter case says (on p. 640): ''[T]he Legislature has the exclusive power to designate those whom the testator may make the objects of his bounty.'' From this it follows that where the intent of a testator, however clear, contravenes the clear purpose of a statute the latter must prevail.

█ The purpose of Probate Code section 41 is clear. As applied to the facts of this case it prevented Mrs. Nicely from leaving more than one-third of her estate to nonexempt charities to the detriment of her daughter. This provision was made, not for the benefit of the public at large, but to protect against ''improvident gifts to charity'' ''those who in the judgment of the legislature had a better claim to his [the testator's] bounty.'' (*Estate of Dwyer*, 159 Cal. 664, 687 [115 P. 235].) And it is most important to emphasize that the section was not enacted to protect the heirs and assigns of the benefited classes. The Legislature did NOT consider them to be persons who ''had a better claim'' to the testator's bounty.

It has been demonstrated above that the clear purpose of Probate Code section 41 would be defeated if distribution of seven-fifteenths of the estate must await the death of Mrs. Herrington. That section is not only a statute of restriction, it is a statute of intestate succession. It provides that the portion of the estate which goes into intestacy shall go to specified heirs, in this case the daughter. It does not provide that it shall go to the daughter's heirs and assigns. To carry out the purposes of the section, therefore, the intestate portion of the estate must be distributed during Mrs. Herrington's lifetime.

██ With the waiver of the corpus invasion provision the trust becomes nothing more than an annuity. (Although, under its terms, the legatees of the residuum were not to take until the death of the life beneficiary it seems obvious that the date-deferment was not intended for *their* benefit but was only a resulting consequence believed inevitable because of the life estate.) In addition to the waiver, appellant, in her brief, has offered to apply to the court for the purchase of a ''devouring'' annuity which will pay her $250 for life.[5] Probate Code section 584 provides in part: ''Pending the settlement of an estate, . . . on the petition of the executor or administrator, or of any person interested in the estate, and upon good cause shown therefor, the court may order any money in the hands of the executor or administrator, to be invested . . . in the purchase from an insurer admitted to do business in this State and for any legatee named in the will of an annuity expressly granted him by said will.''

Appellant should have the opportunity to petition the court under that code section. Without the application (and without the waiver of the corpus invasion right) the probate court could not have terminated the trust and, of course, unless and until the application and waiver have actually been made, it will still be without power to do so and we are equally without power to direct such an order. We have been informed that the waiver will be made. Upon remand, if and when the waiver is filed and the petition made, the opinions herein expressed will be the law of the case for the direction of the probate court.

The cost of the annuity (see fn. 5) should be paid out of Mrs. Herrington's seven-fifteenths of the intestate estate since the purchase is for her benefit and to permit distribution during her lifetime. The court order, as indicated above, must contain provision that the monthly payments to be received shall be inalienable by the annuitant, shall not be subject to the claims of her creditors, shall be made only to her, and that future payments shall not be subject to assignment voluntarily or by operation of law. In short, the court order can contain all of the restrictions of paragraph ''Ninth'' of the will (see fn. 1).

---

[5]Appellant's closing brief states on page 8: ''It is respectfully submitted that the decree appealed from be reversed, and the trial court in probate instructed: (1) To permit appellant to file with it the disclaimer of trustee's right to invade corpus. (2) To permit appellant to seek purchase of an annuity (about $50,000.00). . . .''

In connection with the purchase of an annuity the case at bench is not substantially different from *Estate of Moore,* 219 Cal.App.2d 737 [33 Cal.Rptr. 427], where the testator in a holographic will, after leaving his brother and his brother's wife token bequests, left the rest of his estate (as interpreted by the court) as follows: (1) an annuity of $100 per month to Renee Dellavoix for life; (2) the residue to the Trinity Methodist Church. As to the excess of the residue over one-third the charitable bequest was found to have failed and to have become an intestate portion of the estate which the brother inherited as an heir at law. An annuity was held to have been properly purchased for the annuitant. It was stated that this carried out the testator's intent. Similarly here we believe that the testatrix' intent in this regard will be fulfilled. It was Mrs. Nicely's primary wish as expressed in her will that her daughter be assured $250 per month for life. (See fn. 3, *supra.*)

With its purposes accomplished, there no longer exists any reason for the trust to continue. It is "dry" and "naked." (Civ. Code, § 871; *Moor* v. *Vawter,* 84 Cal.App. 678 [258 P. 622]; 2 Scott, Trusts, § 175, at pp. 1304-1305; 3 Scott, Trusts, § 334, at p. 2436.)

Regarding the payment of death taxes, the probate court, as stated above, found that such taxes, if any, on the intestate portion of the estate should be charged against "the person or persons entitled to receive such portion" (now Mrs. Herrington) "and not as an expense of the administration of the estate." Although Mrs. Herrington contends that finding disregards the provisions of the will we have concluded that the finding is correct.

The will in paragraph Second provided: "I direct my said Executor to pay as an expense of administration, all Federal estate taxes that may be assessed against my estate and all State inheritance taxes that may be levied or assessed against all legatees or devisees herein named and the beneficiary under the trust hereby created."

Since this direction is unequivocal and since no contravening statutory policy interferes to prevent its application it should be followed—as far as it goes. When, however, the testatrix provided for payment of the death taxes as an expense of administration, she did not recognize the possibility of intestacy and cannot therefore be said to have contemplated that death taxes on the intestate part of the estate should be so paid. Therefore no violation of her expectations occurs if

taxes on the intestate portion of the estate be charged pursuant to the general rule that death taxes are to be prorated according to the benefit that each interested person receives from such portion of the estate. (Prob. Code, §§ 970-977; *Estate of Armstrong,* 56 Cal.2d 796, 800 [17 Cal.Rptr. 138, 366 P.2d 490].) Mrs. Herrington, the *sole* beneficiary of the intestate portion, therefore should bear the burden of said portion of the taxes. The charitable legatees derive no benefit and should bear none of the financial impact on that portion. Nothing herein contained, however, shall be deemed to apply to the rest of the death taxes which, under the terms of the will, the testatrix has expressly provided shall be payable out of her gross estate.

When the taxes have been paid and the expenses of administration have been discharged, a distribution of the net estate will result, this distribution to be as follows: 1. From the share to be paid Mrs. Herrington there will be deducted an amount equal to the amounts heretofore paid to her by the trustee under the trust provisions of the will; said amount shall be added to, and deemed to be a part of, the distributable estate. 2. The cost of administration shall be paid. In this connection the cost of the purchase of the annuity policy for Mrs. Herrington and that portion of the death taxes, if any, attributable to her inheritance of the intestate portion of the estate, shall not be included as costs of administration but will be paid out of her distributive share of said intestate portion. (All other death taxes shall be paid in accordance with the directions of the will as hereinabove provided.) 3. After deduction of the costs of administration as in 2 above, the net distributable estate shall be distributed as follows: (a) one-third thereof to the nonexempt charities, (b) the specific bequests shall be paid in full to the parties named in the will and as therein provided. 4. Of the residue one-fifth shall be distributed to the University of California, and 5. The balance (with the deductions noted above having been made) shall be distributed to Mrs. Herrington.

The judgment is reversed and the cause remanded for further proceedings in accordance with the views expressed herein.

Friedman, J., and Regan, J., concurred.

The petition of petitioner and appellant for a hearing by the Supreme Court was denied August 18, 1965.